UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:                                          Case No. 14-07970

DAVID W. CHARRON,                               Chapter 7

      Debtor.                              Honorable James W. Boyd

_____/

GLENN S. MORRIS and THE GLENN S.                Adversary Proceeding No. 15-80086-JWB
MORRIS TRUST,

      Plaintiffs,

v.

DAVID W. CHARRON,

      Defendant.

_____/

## DEFENDANT/DEBTOR DAVID W. CHARRON'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

David W. Charron (the "Debtor"), by and through his counsel, Dunn, Schouten & Snoap, P.C., hereby moves the Court for summary judgment on Plaintiff Glenn S. Morris and the Glenn S. Morris Trust's (collectively the "Plaintiffs") Complaint Objecting to Discharge ( the "Complaint") pursuant to Federal Rule of Civil Procedure 56. In support of the motion, the Debtor respectfully refers the Court to the attached memorandum.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF MATERIAL UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      THE AWARD IS DISCHARGEABLE BECAUSE IT DOES NOT INVOLVE
      COMPENSATION FOR INTENTIONAL, MALICIOUS, INJURY OR DAMAGE
      TO PLAINTIFFS' PROPERTY INTEREST IN MSG STOCK . . . . . . . . . . . . . . . . . . . 9

      A.     The Award Represents a Civil Contempt Sanction for Fees and Costs;
             Not Compensation for Damage to Plaintiffs' Property . . . . . . . . . . . . . . . . . . . . 9

      B.     Plaintiffs' Claims Against the Debtor for Injury and Property Damage Were
             Previously Adjudicated and Dismissed By the Same Trial Court . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

*Cases*

*Adair v. Michigan*, 470 Mich. 105; 680 N.W.2d 386 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Begin v. Michigan Bell Telephone Co.*, 284 Mich.App. 581; 773 N.W.2d 271 (2009). . . . . . . 12

*Blonder-TongueLabs, Inc. v,. Univ. of Ill. Found.*, 402 U.S. 313; 91 S.Ct. 1434 (1971) . . . . . . 11

*Browning v. Levy*, 283 F.3d 761 (6th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Curry v. Detroit*, 394 Mich. 327; 231 N.W.2d 57 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis v. Detroit Financial Review Team,*
    296 Mich. App. 568; 821 N.W.2d 896  (2012) . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7, 9, 10

*Ed Schory & Sons, Inc. v. Francis*, 226 B.R. 385 (6th Cir.BAP 1998) . . . . . . . . . . . . . . . . . . 11

*Estes v. Titus*, 481 Mich. 573; 751 N.W.2d 493 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Gursten v. Kenney*, 375 Mich. 330; 134 N.W.2d 764 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hackley v. Hackley*, 426 Mich. 582; 395 N.W.2d 906 (Mich. 1986). . . . . . . . . . . . . . . . . . . . 12

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir.2007). . . . . . . . . . . . . . . . . . . . . 11

*In Re Kimzey*, 761 F.2d 421 (7th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Geiger*, 113 F.3d 848 (8th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Grenier*, 458 Fed.Appx. 436 (6th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Livingston*, 372 Fed.Appx. 613(6th Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In Re Shaw*, 210 B.R. 992 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kawaauhau v. Geiger*, 523 U.S. 57; 118 S.Ct. 974 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Gates*, 434 Mich. 146; 452 N.W.2d 627 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rally Hill Productions, Inc., v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir.1995) . . . . . . . . . 11

*Stoudemire v. Stoudemire*, 248 Mich.App. 325; 639 N.W.2d 274 (2001). . . . . . . . . . . . . . . . . 12

**Statutes**

11 U.S.C. § 523(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9, 11

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Court Rules**

Federal Rule of Civil Procedure 12(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Federal Rule of Bankruptcy Procedure 7056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

## JURISDICTION

This is a core proceeding.[1]  The Court has jurisdiction over the Complaint and this motion pursuant to 28 U.S.C. § 1334; 28 U.S.C. § 157(b)(2)(I); Federal Rule of Civil Procedure 12(a)(4) and 56; and Federal Rule of Bankruptcy Procedure 7056.[2]

## INTRODUCTION

This proceeding challenges the dischargeability of an award of attorney fees and costs against the Debtor (the "Award") in Kent County Circuit Court Case No. 07-6441-CR (the "Contempt Case")(*See* Final Judgment, 3/7/14, **Exhibit A**).[3]  The Award represented:

> "...a civil contempt sanction in the form of a compensatory award of attorneys fees, other costs, or both, that Plaintiff Glenn Morris incurred in pursuing civil contempt against [the Debtor]. See Davis, 296 Mich App at 626."[4] (Opinion and Order Setting Forth Findings of Civil Contempt, 12/27/12 p. 16).[5]

The trial court contrasted the Award to those it simultaneously entered against others parties for "the loss of value" to Morris, Schnoor & Gremel, Inc. ("MSG"), an insurance agency  at the center of the dispute. *Id.*  The trial court referred to the other parties as "the entities that dispossessed [Plaintiff Morris] of that value[.]" *Id.*  The Award did not involve "damages for personal injury, property damage, or wrongful death[.]" (*See* Opinion Denying Motion for Reconsideration, 5/1/14,

---

[1] *See* Complaint, ¶ 1-3 for Plaintiffs' jurisdictional statement.

[2] Other than ¶ 1-3, the Debtor does not admit or deny the allegations in the Plaintiffs' Complaint. The citations are merely to demonstrate facts that are not disputed by the Plaintiffs.

[3] The Award totaled $363,506.77; it was offset by an offer of judgment sanction in Case No. 09-01878-CB in the amount of $22,443.77 (*See* **Exhibit A**; Contempt Ruling, **Exhibit B**; Opinion and Order Awarding Attorneys Fees, 1/28/14, **Exhibit C**; and the Complaint, ¶ 7).

[4]*Davis v. Detroit Financial Review Team*, 296 Mich App 568 (2012).

[5] The "Contempt Ruling"; **Exhibit B**.

-1-

p. 4, **Exhibit D**; Opinion Denying Motion for New Trial, 5/1/14, p. 2-3, **Exhibit E**).[6]

The same trial court dismissed the Debtor from an earlier action (the "2009 action") brought by the Plaintiffs and seeking damages arising from the same transaction or occurrence in the Contempt Case (*See* Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Disposition, Kent County Circuit Court Case No. 09-01878-CB, p. 10-11, **Exhibit F**)(the "Summary Disposition Opinion"). The 2009 action alleged the Debtor committed fraud, conversion and other malicious acts — which caused injury to the Plaintiffs' secured interest in the stock of MSG — when the Debtor's law firm conducted an Article 9 sale of the assets of MSG (*See* Verified and First Amended Complaint, Case No. 09-01878-CB, **Exhibit G**). The Plaintiffs appealed the trial court's dismissal of the Debtor in the 2009 actions; the dismissal was affirmed on appeal.[7]

This action is ripe for summary judgment because there is no genuine issue of material fact or law that the Award did not compensate the Plaintiffs for injury or damage to their stock interest, or any other property interest. All of the Plaintiffs' claims against the Debtor for damage or injury to their stock interest — malicious, intentional or otherwise — were adjudicated and dismissed by the trial court and the COA (collectively the "Michigan Courts") in the 2009 action. These claims were extinguished and relitigation is barred by the doctrine of res judicata and/or collateral estoppel.

The Award was premised solely upon the holding of *Davis v. Detroit Financial Review Team*, 296 Mich. App. 568, 625; 821 N.W.2d 896 (2012)(*See* **Exhibit I**), a case which allows for

---

[6] The issuance of the Award was affirmed by the Michigan Court of Appeals ("COA") in Case No. 315006. A second appeal, involving the trial court's determination of the amount of the Award, was filed with the Michigan Court of Appeals as Case No. 321925. The second appeal is stayed by the Debtor's bankruptcy filing.

[7] COA Case No. 315007 and 315742. The COA cases were consolidated with 315006 purposes of appeal (*See* **Exhibit H**).

the imposition of costs as contempt sanctions — regardless of whether the contemnor caused injury to persons or property (*See* **Exhibit B**, p. 15). The Award involves the "trial court's inherent power to punish contempt[,]" rather than "a contempt action premised in tort liability" which exercises the court's power to "impose legal responsibility in the form of compensation for harm done." (*See* **Exhibit H**, p. 19).

For these reasons, as elaborated and supplemented below, the Court should dismiss the Plaintiffs' Complaint (Objection to Discharge) in its entirety and enter judgment for the Debtor.

## ISSUE PRESENTED

Whether the Plaintiffs' Complaint (Objection to Discharge) is unsustainable under 11 U.S.C. § 523 (a)(6) because the Award does not involve compensation for intentional, malicious, injury or damage to the Plaintiffs' property interest in MSG stock, as alleged by the Plaintiffs?

## STANDARD FOR REVIEW

The Debtor moves for summary judgment pursuant to Rule 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, the Court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir.2002). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248; 106 S.Ct. 2505 (1986).[8] Summary judgment

---

[8] The Court should look at the materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations...admissions...or other material, or

should be awarded "if after reviewing the record as whole a rational factfinder could not find for the nonmoving party." *Ercegovich v Goodyear Tire & Rubbing Co.*, 154 F.3d 344, 349 (6th Cir.1998).

## STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to Federal Rule of Civil Procedure 56(c), the Debtor provides the following material facts that cannot be disputed[9] with admissible evidence:

A.    In May of 2008, the law firm of Charron & Hanisch, PLC ("C&H") obtained a security interest in the assets of a corporate client, MSG, to secure the repayment of attorney fees (*See* **Exhibit B**, p. 7-8, 18). The Debtor was an attorney at C&H. *Id.* at p. 15 (*See* Complaint, ¶ 21).

B.    Plaintiffs held a security interest in half of the stock shares of MSG owned by R. Judd Schnoor, another client of C&H (*See* **Exhibit B**, p. 12, fn 8; Complaint, ¶ 31).

C.    On August 22, 2008, the trial court issued an order which read: "IT IS FURTHER ORDERED that Defendant R. Judd Schnoor shall not transfer assets of Morris, Schnoor & Gremel, Inc., outside the ordinary course of business without authorization from the Court to do so." (*See* **Exhibit B**, p. 4; Complaint, ¶ 37).

D.    On November 21, 2008, C&H conducted a Uniform Commercial Code Article 9 sale of MSG's assets (for $395,000) to recover a delinquent debt owed by MSG to C&H (*See* **Exhibit B**, p. 6,; Complaint ¶ 49).

E.    On February 20, 2009, the Plaintiffs filed a complaint against the Debtor, MSG, C&H

---

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Federal Rule of Civil Procedure 56(1).

[9] To avoid factual disputes, the Debtor relies solely upon the complaints and opinions in Kent County Circuit Court Case Nos. 07-6441-CR and 09-01878-CB, and this proceeding.

and the buyer alleging fraudulent transfer, commercially unreasonable sale, fraud and conversion in relation to the sale (*See* **Exhibit G**).[10] The Plaintiffs sought damages for injuries and property loss. *Id.* In support of the relief, the Plaintiffs alleged:

> "27.    On August 22, 2008, Judge Yates entered an order precluding Schnoor from transferring selling or transferring the assets of [MSG] except as may be permitted in the normal course of MSG Inc.'s business.[11]
>
>                          ****
>
> 31.    ...All of the assets of the Company including all contracts, receivables and intangibles were then seized by [the Debtor and C&H] after they filed a demand letter with MSG, Inc...[12]
>
>                          ****
>
> 48.    [The Plaintiffs] had an interest in the assets of MSG, Inc. by virtue of the protection afforded by the Court Restraining Order Dated August 22, 2008, his security interest in the stock of MSG, Inc. consisting of 50% of MSG, Inc., and his rights under the Promissory Note.[13]
>
>                          ****
>
> 53    ...[Defendants] were aware that they had previously taken a security interest in the assets of MSG, Inc. and that they had, in fact, seized, transferred and sold these assets to [NYPIA] in violation of the terms of the Court Order more than 30 days before[.][14]
>
>                          ****
>
> 58.    [The Debtor and C&H] improperly exerted control over [the Plaintiffs']interest in MSG, Inc. when they converted their security interest

---

[10]  The case is docketed as 17th Circuit Court Case No. 09-01878-CB (*See* **Exhibit G**).

[11]  This allegation is nearly identical to the allegation in Paragraph 37 of the Plaintiffs' Complaint Objecting to Discharge.

[12]  This allegation is nearly identical to the allegation in Paragraph 44 of the Plaintiffs' Complaint Objecting to Discharge.

[13]  This allegation is nearly identical to the allegation in Paragraph 82 of the Plaintiffs' Complaint Objecting to Discharge. The documents creating the Plaintiffs' security interest were attached to the Plaintiffs' First Amended Verified Complaint as exhibits (*See* **Exhibit G**, ¶ 17).

[14]  This allegation is nearly identical to the allegation in Paragraph 87 of Plaintiffs' Complaint Objecting to Discharge.

in the assets of MSG, Inc. for their own benefit.[15]

\*\*\*\*

59.    The conversion directly interfered with [the Plaintiffs']rights[.][16]

F.    The trial court dismissed all claims against the Debtor in the 2009 action on October

22, 2009 (*See* **Exhibit F**, p. 10-11).  It reasoned:

> "Although [the Debtor] was integrally involved in the transactions that gave rise to
> this lawsuit, there is neither a sustainable allegation in the amended complaint nor
> any proof in the record that [the Debtor] personally held, obtained, or received any
> assets of MSG. To be sure, he almost certainly benefitted as a partner in Charron &
> Hanisch when that law firm acted upon its secured interest in MSG and realized a
> gain of approximately $395,000 in attorney fees...but the responsibility to disgorge
> that money, if it was ill-gotten, rests entirely with the law firm of Charron & Hanisch,
> PLC, and there is no basis in the amended complaint nor in fact to support the
> conclusion that [the Debtor] converted the assets of MSG in his personal capacity. Although
> [the Debtor] was singled out in the common law fraud claim in Count
> Three, that claim as pleaded in the amended complaint cannot withstand [the
> Debtor's] motion for summary disposition.  Accordingly, [the Debtor] is entitled to
> summary disposition on all counts in his personal capacity." *Id.*

G.    The Plaintiffs appealed the Debtor's dismissal to the Michigan Court of Appeals.[17]

The COA affirmed the dismissal (*See* **Exhibit G**, p. 44-45).

H.    The same trial court subsequently determined that C&H's sale violated the August

22, 2008 injunction against R. Judd Schnoor (*See* **Exhibit B**, p. 15). It held MSG, C&H and the

Debtor in contempt, reasoning:

> "Here, [the Plaintiffs] logically should receive compensation for loss of value to
> MSG from the entities that dispossessed [the Plaintiffs] of that value, i.e., MSG and
> C&H. The appropriate sanction for [the Debtor], in contrast, involves "a civil
> contempt sanction in the form of a compensatory award of attorney fees, other costs,

---

[15] This allegation and the next cited allegation (paragraph 59) are nearly identical to the
allegations in Paragraphs 84, 87 and 89 of Plaintiffs' Complaint Objecting to Discharge.

[16] *See* First Amended Verified Complaint, **Exhibit G**.

[17] Michigan Court of Appeals case numbers 315007 and 315742.

-6-

or both," that [the Plaintiffs] incurred in pursuing civil contempt against [the Debtor]. <u>See Davis</u>, 296 Mich App at 626. Therefore, the Court shall direct [the Debtor] to compensate [the Plaintiffs] for the attorney fees and costs [the Plaintiffs] incurred in the contempt trial that took place in 2011." (*See* **Exhibit B**, p. 16,).

I.      The COA affirmed these findings (*See* **Exhibit H**, p. 1-23,).

J.      The Plaintiffs were awarded attorney fees and costs against the Debtor on January 28, 2014 (*See* **Exhibit C**; Complaint, ¶ 6).

K.      The Debtor filed a motion for reconsideration and for a new trial (*See* **Exhibit J**). They addressed the applicability of MCL 600.2957(1)[18] and whether the Award should be apportioned against other responsible parties. *Id.* In two separate opinions, the trial court held that the Award did not need to be apportioned because it was not for "personal injury, property damage or wrongful death":

> "[The Debtor] and C&H contend that the Court should have allocated fault among all responsible parties pursuant to MCL 600.2957(1), which states that, "[i]n an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact..." <u>Because this civil contempt proceeding does not involve a request for "damage for personal injury, property damage or wrongful death," MCL 600.2957(1) has no application here.</u>" (*See* **Exhibit D**, p. 2-3) (Emphasis added);

> ****

> "Third, Attorney Charron and C&H assert that the recent decision of our Supreme Court in the case of *In re Bradley Estate*, 494 Mich 367 (2013) — a dispute about the nature of contempt for purposes of the Governmental Tort Liability Act ("GTLA") — obliges the Court to try this case anew in order to apportion fault under MCL 600.2957(1). To be sure, our Supreme Court concluded in *In re Bradley*, "that 'tort

---

[18] "In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to 6304, in direct proportion to the person's percentage of fault." MCL 600.1721(1). "[B]y virtue of [MCL 600.]6304...a tortfeasor need only pay a percentage of the common liability that is proportionate to his fault." *Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 472 Mich. 44; 639 N.W.2d 149 (2005).

liability' as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages[,]" *In re Bradley Estate*, 494 Mich at 385, but that holding does not require the allocation of fault under MCL 600.2957(1) in this civil contempt proceeding. By its terms, MCL 600.2957(1) states that, in "an action based on tort of another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact..." Because this civil contempt proceeding does not involve a request for "damages for personal injury, property damage, or wrongful death," MCL 600.2957(1) has no application here." (*See* **Exhibit E**, p. 4)(Emphasis added).

L.      The COA affirmed the trial court's characterization of its contempt sanctions as an "inherent power to punish contempt[,]" as distinguished from a contempt sanction designed to impose "legal responsibility in the form of compensation for the harm done[.]" (*See* **Exhibit H**, p. 19). The COA held the Debtor did not have the right to allocate fault among other responsible parties because the Award did not impose tort liability. *Id.*

M.      The Debtor filed for bankruptcy relief under chapter 7 of the United States bankruptcy code on December 31, 2014, and listed the Award on its schedule of unsecured debts to be discharged (Complaint, ¶ 4, 10).

N.      The Plaintiffs filed a Complaint Objecting to Discharge on April 10, 2015. It alleged the following as the basis for its objection:

"93.    [The Plaintiffs'] security interest in MSG's stock constitutes a property interest.

94.     [The Debtor] thus willfully and maliciously caused injury to [the Plaintiffs'] property.
                                        * * * *
96.     Because [the Debtor] willfully and maliciously caused injury to [the Plaintiffs'] property, [the Debtor] is not entitled to a discharge pursuant to 11 U.S.C. § 523(a)(6)." (*See* Complaint, p. 10-11)(Emphasis added).

-8-

## ARGUMENT

**I.    THE AWARD IS DISCHARGEABLE BECAUSE IT DOES NOT INVOLVE COMPENSATION FOR INTENTIONAL/MALICIOUS INJURY OR DAMAGE TO PLAINTIFFS' PROPERTY INTEREST IN MSG STOCK**

The Plaintiffs object to the Debtor's discharge on the basis of 11 U.S.C. § 523 (a)(6)(Complaint, ¶ 94-97); it provides:

> (a) A discharge under section 727, 1141, 1128(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (6) for willful and malicious injury by the debtor to another entity or to the property of another entity [.]

For the statute to be applicable, the Debtor's actions must be: (1) willful, (2) malicious and (3) result in injury to another entity or the property of another entity. *Id.*; *Kawaauhau v. Geiger*, 523 U.S. 57, 61; 118 S.Ct. 974 (1998); *In Re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985). The United States Court of Appeals for the Eight Circuit elaborated on this standard in *In re Geiger*, 113 F.3d 848, 852-853 (8th Cir.1997), *aff'd, Kawaahau v. Geiger*, 523 U.S. 57; 118 S.Ct. 974 (1998):

> "what is required for nondischargeability is a deliberate or intentional injury, not merely a deliberate or intentional act. We think it fair to conclude that this means a deliberate or intentional invasion of the legal rights of another, because the word "injury" usually connotes legal injury ( *injuria* ) in the technical sense, not simply harm to a person. We therefore think that the correct rule is that a judgment debt cannot be exempt from discharge in bankruptcy unless it is based on what the law has for generations called an intentional tort, a legal category that is based on "the consequence of the act rather than the act itself." (internal citations omitted)(Emphasis added).

**A.    The Award Represents a Civil Contempt Sanction for Fees and Costs, Not Compensation for Damage to Plaintiffs' Property.**

The Award in this case does not involve an intentional tort or tort liability, nor compensation for property damage. The trial court relied exclusively upon *Davis*, 296 Mich. App. 568 (2012)(*See* **Exhibit I**), as authority for the imposition of the Award (*See* **Exhibit B**, p. 16). The case involved the validity of an injunction that was implemented to prevent the Detroit Financial Review Board

-9-

(the "Review Board") from engaging in conduct the trial court deemed to be violative of the Open Meetings Act ("OMA"). *Davis*, 296 Mich. App. at 578 (2012). The Review Board continued the prohibited conduct, notwithstanding the injunction. The Michigan Courts of Appeals vacated the injunction after an emergency appeal and held the Review Board was not subject to the OMA. *Id.* at 584, 624. The COA then remanded the case to determine whether the plaintiff was entitled to an award of attorney fees and costs that he incurred in proving a violation of the injunction. *Id.* at 626. *Davis* authorized such an award as a civil contempt sanction, even though the injunction was invalidated and no injury resulted from its violation. *Id.* 625-626.

In the Contempt Case, the trial court equated the Debtor to the position of the Review Board. The Debtor violated the court order but the court did not hold him responsible for the Plaintiffs' lost stock value. The Plaintiffs had sued Debtor for these damages under various intentional tort theories and lost. The trial court in the Contempt Case held other parties — MSG and C&H — responsible for this loss of value (*See* **Exhibit B**, p. 16). The trial court used the phrase "in contrast" to distinguish the Debtor from "the **entities** that dispossessed [the Plaintiffs] of" the value. *Id* (Emphasis added).[19]

Following the Contempt Ruling, the trial court ruled in two opinions that the Award did not involve "damages for personal injury, property damage, or wrongful death[.]" (*See* **Exhibit D**, p. 2-3; **Exhibit E**, p. 4). The trial court refused to allocate the Award among responsible parties under MCL 600.2957(1) because the Award was not tort compensation for "property damage". The

---

[19] The holding is consistent with the opinion in the 2009 action: "the responsibility to disgorge that money, if it was ill-gotten, rests entirely with the law firm of Charron & Hanisch, PLC, and there is no basis in the amended complaint nor in fact to support the conclusion that [the Debtor] converted the assets of MSG in his personal capacity." (*See* **Exhibit F**, p. 10-11).

Award was a "contempt sanction", authorized by *Davis,* to penalize the Debtor for the cost incurred by others to participate in the Contempt Case. The Court of Appeals affirmed the trial court's reliance upon *Davis* to award fees and costs.  The appellate court characterized the Award as implementing "a trial court's inherent power to punish contempt[,]" rather than an act to compensate Plaintiffs for a tort liability *(See* **Exhibit H,** p. 19).

The Court should give preclusive effect to the state court's factual and legal findings about the Award when, as evidenced from the prior cases, the Plaintiffs had a full and fair opportunity to litigate the issue, *Rally Hill Productions, Inc., v. Bursack,* 65 F.3d 51, 53 (6th Cir.1995); *Ed Schory & Sons, Inc. v. Francis,* 226 B.R. 385, 388 (6th Cir.BAP 1998). *People v. Gates,* 434 Mich. 146; 452 N.W.2d 627, 631 (1990)(citing *Blonder-TongueLabs, Inc. v,. Univ. of Ill. Found.,* 402 U.S. 313, 329; 91 S.Ct. 1434 (1971)[20], and it is clear, definite, and unequivocal how the issue was decided. *People v. Gates,* 434 Mich. 146; 425 N.W.2d 627, 630-631 (1990), cited with approval by *In re Grenier,* 458 Fed.Appx. 436 (6th Cir.2012); *In re Livingston,* 372 Fed.Appx. 613, 617-618 (6th Cir.2010); *Hamilton's Bogarts, Inc. v. Michigan,* 501 F.3d 644, 650 (6th Cir.2007).[21]    There is no genuine issue of material fact or law that the Award did not represent tort damages suffered by the Plaintiffs *(See* **Exhibit D, E** and **H)**.  The Complaint is unsustainable without an intentional tort and a damage award compensating for such tort.   The Award is an ordinary judgment and dischargeable debt.

---

[20] "Bankruptcy courts exclusive jurisdiction over dischargeability does not alter this rule...that congress intended the bankruptcy court to determine the final result — dischargeability or not — does not require the bankruptcy court redetermine all the underlying facts." *In re Bursack,* 65 F.3d at 53 (1995)(internal citations omitted).

[21] Under Michigan law, collateral estoppel "requires that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes v. Titus,* 481 Mich. 573; 751 N.W.2d 493, 500 (2008).

**B.**    **Plaintiffs' Claims for Injury and Property Damage Were Previously Adjudicated and Dismissed By the Same Trial Court**

As additional support for the foregoing, all claims against the Debtor for injury/damage to the Plaintiffs or their security interest were adjudicated in the 2009 action. The Plaintiffs alleged various intentional torts involving the Debtor, and injuries to Plaintiffs and their property, arising from the sale of MSG assets. The trial court dismissed all of Plaintiffs' claims against the Debtor. The dismissal was affirmed on appeal. All elements of res judicata are present to bar claims from this incident from serving as the basis for Plaintiffs' current claim that the Award is nondischargeable: (1) the 2009 action was decided on the merits; (2) the prior decision was a final judgment; (3) both actions contain the same parties; and (4) the issues presented in the Complaint were or could have been decided in the 2009 action. *Stoudemire v. Stoudemire*, 248 Mich.App. 325, 334; 639 NW2d 274 (2001); *Begin v Michigan Bell Telephone Co*, 284 Mich.App. 581, 600; 773 N.W.2d 271 (2009); *Adair v Michigan*, 470 Mich. 105, 119; 680 N.W.2d 386 (2004). As stated by the Michigan Supreme Court in *Hackley v. Hackley*, 395 N.W.2d 906, 584-585, 426 Mich. 582 (Mich. 1986), cited with approval by *In Re Shaw*, 210 B.R. 992, 997 (1997):

> "In Michigan, the doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and " 'not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'" *Curry v. Detroit*, 394 Mich. 327, 332; 231 N.W.2d 57 (1975), quoting *Gursten v. Kenney*, 375 Mich. 330; 134 N.W.2d 764 (1965)."

Res judicata prevents Plaintiffs from re-litigating the current claims or re-characterizing the Award as an intentional tort. The Debtor is not liable for injury to Plaintiffs or their property arising from the MSG asset sale, including but not limited to claims for intentional or malicious injury, because the Michigan Courts adjudicated him to not be responsible for such injury or damages.

-12-

CONCLUSION

For the reasons identified in the motion and this memorandum, the Defendant respectfully requests that the Court grant the Defendant's Motion for Summary Judgment, dismiss the Plaintiffs' Complaint in its entirety, declare the Award to be dischargeable and issue the proposed order attached to this motion as Exhibit K.

Respectfully submitted,

DUNN, SCHOUTEN & SNOAP PC
 Attorneys for the Defendant David W. Charron


By:     /s/ Perry G. Pastula
        Perry G. Pastula (P35588)
Business address:
        2745 DeHoop Ave SW
        Grand Rapids, MI 49509
        (616) 538-6380