UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Case No. 14-07970 |
| DAVID W. CHARRON, | Chapter 7 |
| Debtor. | Honorable James W. Boyd |
| GLENN S. MORRIS and THE GLENN S. MORRIS TRUST, | |
| Plaintiffs, | |
| v. | Adversary Proceeding No. 15-80086-JWB |
| DAVID W. CHARRON, | |
| Defendant. | |

**GLENN S. MORRIS'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

David W. Charron ("Debtor") violated a state court order restraining the transfer of assets from an entity whose dissolution was pending before the state court ("MSG"). After a lengthy hearing, the state court concluded this was a "textbook example of contempt of court by Attorney Charron, who recognized that a court order prohibited all transfers of MSG's assets outside the ordinary course of business . . . yet took actions on behalf of his client (MSG) and his own law firm that did precisely what the court order forbade."

Plaintiff Glenn Morris, individually and as trustee for the Glenn S. Morris Trust (collectively, "Morris") suffered losses as a result of the Debtor's actions. Morris's security interest in MSG's stock was rendered worthless, and Morris was required to expend significant funds litigating the Debtor's violation. The Debtor had multiple roles in the proceedings—attorney, creditor, contemnor—so when the state court ultimately ruled against the Debtor, it carefully parsed out the damages it awarded against the Debtor and the entities he controlled and

represented.  The debt at issue in this matter was awarded against the Debtor personally as compensation for the fees and costs Morris incurred in the Debtor's contempt proceeding.

Now before this Court is Morris's complaint to declare as nondischargeable the Debtor's obligation to Morris pursuant to the contempt award.  Both parties have filed for summary judgment with regards to this complaint, relying on the strength of the state court findings.

The Debtor filed a motion for summary judgment in which he repeats arguments rejected by the state trial and appellate courts and glosses over the applicable Sixth Circuit standards.  These are only attempts to distract the Court from the real issue, which is this:  was the state court's contempt award against the Debtor a debt resulting from the Debtor's actions, and did the Debtor "believe injury [wa]s substantially certain to occur as a result of his behavior?"  *Musili v. Droomers (In re Musili)*, 379 Fed. Appx. 494, 498 (6th Cir. 2010) (quoting *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10 (6th Cir. 1999)).  For Morris to prevail in his complaint, that is all that needs be shown.  To prevail on summary judgment, Morris must show that there is no genuine issue of material fact as regards the issue.

Here, the state trial court issued detailed opinions finding that the Debtor, a licensed attorney, knowingly violated its protective order not to transfer assets.  Because the Debtor violated a protective order, harm was a certain result.  Indeed, the transfer of MSG's assets rendered Morris's security interest in its stock worthless and caused Morris to incur substantial additional legal costs.  The state court thus awarded Morris compensatory damages.

The destruction of Morris's interest in MSG's stock was awarded against the Debtor's law firm and MSG.  The state court assessed Morris's legal fees against the Debtor personally.  Case law makes clear that these legal costs, the debt at issue here, flowed from the Debtor's

violation of the protective order and thus constitute a debt that resulted from them.  This debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

All of these questions were litigated, determined against the Debtor, and the rulings upheld in appeal; thus, they are entitled to preclusive effect.

For these reasons, and for the reasons set forth in the accompanying brief, Morris, by his attorneys, Miller, Canfield, Paddock and Stone, P.L.C., requests that the GRANT his cross-motion for summary judgment and grant such further relief as may be just.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:    /s/ Ronald A. Spinner
      Stanley J. Stek (P29332)
      Eric D. Carlson (P60277)
      Ronald A. Spinner (P73198)
      Attorneys for Plaintiffs
      150 West Jefferson, Suite 2500
      Detroit, MI  48226
      (313) 496-7829
      spinner@millercanfield.com

Dated:  May 29, 2015

<u>**EXHIBIT 1**</u>

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Case No. 14-07970 |
| DAVID W. CHARRON, | Chapter 7 |
| Debtor. | Honorable James W. Boyd |
| GLENN S. MORRIS and THE GLENN S. MORRIS TRUST, | |
| Plaintiffs, | Adversary Proceeding No. 15-80086-JWB |
| v. | |
| DAVID W. CHARRON, | |
| Defendant. | |

**[PROPOSED] ORDER GRANTING PLAINTIFF
<u>GLENN S. MORRIS'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

This matter having come before the Court on *Defendant/Debtor David W. Charron's Motion for Summary Judgment and Memorandum in Support Thereof*, *Glenn S. Morris's Response to Debtor's Motion for Summary Judgment* and *Glenn S. Morris's Cross-Motion for Summary Judgment and Brief in Support*; proper notice for the motion and cross-motion having been afforded; the Court having reviewed the papers, held a hearing, and otherwise being fully apprised with regard to the issues raised in the motion and cross-motion, and there being sufficient cause, NOW, THEREFORE, IT IS HEREBY FOUND AND ORDERED THAT

1.      The Plaintiff's cross-motion for summary judgment is granted to the extent provided in this Order.

2.      The Circuit Court for Kent County, Michigan, found that the Debtor knowingly violated its order not to transfer the assets of Morris, Schoor & Gremel, Inc.

3.    The Debtor knew that harm would result from his violation of the Circuit Court's order.

4.    The harms that resulted from the Debtor's violation of the Circuit Court's order included the loss suffered by the Plaintiff in the form of legal fees and costs related to the Debtor's contempt hearing.

5.    The contempt damage award of $363,506.77 that the Circuit Court awarded to the Plaintiff and against the Debtor was to compensate the Plaintiff for the harm he suffered in the form of legal fees and costs that resulted from the Debtor's violation of the Circuit Court order.

6.    The contempt damage award of $363,506.77 represents a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" within the meaning of 11 U.S.C. § 523(a)(6).

7.    The contempt damage award of $363,506.77, along with any interest and fees provided by state law, is nondischargeable in the Debtor's bankruptcy.

END OF ORDER

## EXHIBIT 2

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Case No. 14-07970 |
| DAVID W. CHARRON, | Chapter 7 |
| Debtor. | Honorable James W. Boyd |
| GLENN S. MORRIS and THE GLENN S. MORRIS TRUST, | |
| Plaintiffs, | Adversary Proceeding No. 15-80086-JWB |
| v. | |
| DAVID W. CHARRON, | |
| Defendant. | |

The Plaintiffs have filed papers with the court to seeking summary judgment in its favor.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the relief sought in the motion, then on or before fourteen (14) days from the date set forth in the certificate of service for the motion, you must file with the court a response that explains your specific reason for objecting or requesting a hearing by mailing your response by regular U.S. Mail to

> United State Bankruptcy Court
> One Division Ave., N.
> Room 200
> Grand Rapids, MI 49503

or your attorney must file a response using the court's ECF System.

The court must **receive** your response on or before the above date.

You must also send a copy of your response either by 1) the court's ECF System or by 2) regular U.S. Mail to

>   Ronald A. Spinner
>   Miller, Canfield, Paddock & Stone, PLC
>   150 West Jefferson, Suite 2500
>   Detroit, MI 48226

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion/objection and may enter an order granting that relief without further hearing or notice.

>   MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
>
>   By:   /s/ Ronald A. Spinner
>   Stanley J. Stek (P29332)
>   Eric D. Carlson (P60277)
>   Ronald A. Spinner (P73198)
>   Attorneys for Plaintiffs
>   150 West Jefferson, Suite 2500
>   Detroit, MI 48226
>   (313) 496-7829
>   spinner@millercanfield.com

Dated: May 29, 2015

**EXHIBIT 3**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re: | Case No. 14-07970 |
| DAVID W. CHARRON, | Chapter 7 |
| Debtor. | Honorable James W. Boyd |
| GLENN S. MORRIS and THE GLENN S. MORRIS TRUST, | |
| Plaintiffs, | Adversary Proceeding No. 15-80086-JWB |
| v. | |
| DAVID W. CHARRON, | |
| Defendant. | |

**GLENN S. MORRIS'S BRIEF IN SUPPORT OF HIS
CROSS-MOTION FOR SUMMARY JUDGMENT**

**Miller, Canfield, Paddock & Stone, PLC**

**Stanley J. Stek**
**Eric D. Carlson**
**Ronald A. Spinner**
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 496-7829
spinner@millercanfield.com
**Attorneys for Plaintiffs**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................**Error! Bookmark not defined.**

I.    INTRODUCTION ....................................................................................... 1

II.   BACKGROUND ......................................................................................... 2

III.  LEGAL STANDARDS ............................................................................... 5

      A.    Summary Judgment standard. ............................................................ 5

      B.    Non-dischargeability standard for violation of court orders. ................................ 5

            1.    Non-dischargeability standard under 11 U.S.C. § 523(a)(6) generally. ........................................................................................ 5

            2.    Debts incurred for violation of protective court orders are almost always non-dischargeable under 11 U.S.C. § 523(a)(6). .......................... 6

            3.    Debts that are non-dischargeable under 11 U.S.C. § 523(a)(6) include "any liability arising" from the prohibited conduct. .................... 8

      C.    Application of collateral estoppel to nondischargeability actions. ........................ 9

      D.    Putting it all together – the *Musilli* case ............................................. 11

IV.   ARGUMENT .............................................................................................. 13

V.    CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*,
242 B.R. 229 (Bankr. W.D.N.Y. 1999) ................................................................6, 8, 11, 13

*Cohen v. de la Cruz*,
523 U.S. 213 (1998)..................................................................................................9, 13

*Lowry v. Nicodemus (In re Nicodemus)*,
497 B.R. 852 (B.A.P. 6th Cir. 2013).........................................................................6, 13

*Markowitz v. Campbell (In re Markowitz)*,
190 F.3d 455 (6th Cir. 1999) ..................................................................................10, 14

*Morris v. Schnoor*,
859 N.W.2d 514 (Mich. 2015)...................................................................................5, 14

*Morris v. Schnoor*,
Nos. 315006, 315007, 315702, and 315742, 2014 WL 2355705 (Mich. Ct. App.
May 29, 2014) (attached as exhibit H to Debtor's motion for summary judgment) ..........5, 14

*Musili v. Droomers (In re Musili)*,
379 Fed. Appx. 494 (6th Cir. 2010)................................................................... *passim*

*Star's Edge, Inc. v. Braun (In re Braun)*,
327 B.R. 447 (Bankr. N.D. Cal. 2005) .......................................................................9, 13

*Suarez v. Barrett (In re Suarez)*,
400 B.R. 732 (B.A.P. 9th Cir. 2009)...........................................................................9, 13

*Trost v. Trost (In re Trost)*,
510 B.R. 140 (Bankr. W.D. Mich. 2014)..................................................................5, 6, 10

**Statutes**

11 U.S.C. § 523(a)(6)........................................................................................ *passim*

## I.    __INTRODUCTION__

Attorney David W. Charron (the "Debtor") knowingly violated a restraining order entered by a state court.  The protective order was designed to preserve the assets of an entity undergoing dissolution.  By knowingly violating this order, the Debtor, a licensed attorney, knew that Plaintiff Glenn Morris, individually and as trustee for the Glenn S. Morris Trust (collectively, "Morris"), would be injured.  And, in fact, Morris was injured in at least two ways: (1) the Debtor's transfer of the entity's assets rendered Morris's security interest in the entity's stock worthless, and (2) Morris incurred substantial legal costs in the Debtor's contempt proceedings.

To compensate Morris for these harms, the state court awarded him damages against several entities.  Some were awarded against the Debtor's law firm for its role in the scheme. Other damages were awarded directly against the Debtor in the form of contempt sanctions to compensate Morris for the costs Morris incurred in the contempt proceedings.

The Debtor has now filed bankruptcy, seeking to discharge the contempt award entered against him.  He cannot do so because, after thorough litigation in which the Debtor vigorously defended himself, the state court found that the Debtor knowingly violated its protective order. Because the state court order specifically identified the conduct that would be harmful, the Debtor's violation of that order was certain to cause harm.  Moreover, as a licensed attorney, the Debtor had to know that violating a court's restraining order would cause harm.  The Debtor's actions thus render his debt to Morris nondischargeable, and the state court proceedings suffice for invocation of collateral estoppel.  Because these facts have already been litigated, determined against the Debtor, and upheld on appeal, there are no genuine issues of material fact.  Summary judgment thus should be entered in Morris's favor.

## II.    <u>BACKGROUND</u>

This matter arises from a dispute in which the Debtor, an attorney, represented R. Judd Schnoor ("<u>Schnoor</u>") and Morris, Schnoor & Gremel, Inc. ("<u>MSG</u>").  The dispute was heard in the 17th Circuit Court for Kent County, Michigan ("<u>State Court</u>").  Two cases represented the bulk of the dispute:  Case Number 07-6441-CR ("<u>Case 07-6441</u>") and Case Number 09-01878-CB ("<u>Case 09-01878</u>"; and collectively, the "<u>State Court Cases</u>").  The Debtor, in its filing for summary judgment ("<u>Debtor's SJ Motion</u>," Doc. No. 4), acknowledges that the State Court Cases findings of facts are undisputed.  *See* Debtor's SJ Motion, p.4, n.9.  Additionally, all appeals of the State Court Cases have been completed, rendering them final and unalterable.  To the extent that issues relevant to this matter were fully litigated and necessary to the State Court's findings, they will suffice for application of collateral estoppel, as discussed in greater detail, *infra*.

The following facts are taken from the State Court's findings in the State Court Cases and from the Debtor's bankruptcy schedules.[1]

In July, 2007, Morris filed Case 07-6441 seeking dissolution of MSG, an entity owned by both Morris and Schnoor.  <u>Contempt Opinion</u> (Ex. A. to Doc. No. 1 ("<u>Complaint</u>")), p. 2. The Debtor represented Schnoor in this case.  *Id.*, p. 3.  To resolve the matter, the Court ordered Morris to sell his stock to Schnoor for $2.5 million.  *Id.*, p. 2.  Morris did so, receiving from Schnoor a down payment of $235,804 and a promissory note in the amount of $2,264,196 (the "<u>Note</u>").  *Id.* at 3.  Morris retained a security interest in MSG's stock, but not in its assets.  *Id.*

Schnoor made only a few payments under the Note, then defaulted in the spring of 2008.  *Id.*  On August 20, 2008, the State Court held a hearing to determine whether Schnoor should be

---

[1] For a more complete rendering of the parties' history, please see the Complaint filed at Docket No. 1.

held in contempt for failing to pay for MSG's stock as ordered. *Id.* The parties agreed to entry of a protective restraining order while the State Court considered the matter, and thus, two days later, the State Court entered an order stating "that Defendant R. Judd Schnoor shall not transfer assets of Morris, Schnoor & Gremel, Inc., outside the ordinary course of business without authorization from the Court to do so" ("Restraining Order," Complaint, Ex. E). *Id.* at 4. A few days later, on September 2, the State Court ordered that the Restraining Order was to "continue until further order of the Court." *Id.*

Despite the Restraining Order, the Debtor almost immediately began working to transfer MSG's assets to a friendly buyer. *Id.* at 4-5. The Debtor knew that the transfer of MSG's assets would violate the Restraining Order and render Morris's security interest in MSG's stock worthless. Id. at 5-7. The Debtor used his law firm's security interest in MSG's assets so that his firm could act as a middleman in the transfer. *Id.* at 6.

On November 21, 2008, the Debtor's firm took possession of MSG's assets and sold them for an alleged $395,000. *Id.* When asked in December about the status of the assets, the Debtor responded, "If you believe he [Schnoor] has violated the [Restraining O]rder, let's have a shoot out so we may disclaim you of the notion." *Id.* at 7. The Debtor also acknowledged that the Restraining Order prevented any transfers, though by this time, the assets were already gone. *Id.*

Upon learning that the Debtor may have violated its Restraining Order, the State Court held a hearing to determine whether to hold the Debtor in contempt, applying the clear and convincing evidentiary standard. *Id.*, 1-7, 10. The State Court found that the Debtor

      (a)  had knowledge of the Restraining Order and its terms. *Id.* at 15.

      (b)  was bound by the Restraining Order. *Id.*

    (c)   "siphoned all of the assets of MSG through his law firm and passed them on to NYPIA" in violation of the Restraining Order. *Id.*

    (d)   recognized the impropriety of his conduct. *Id.* at 16.

    (e)   committed "a textbook example of contempt of court," in that he "recognized that a court order prohibited all transfers of MSG's assets outside the ordinary course of business . . . yet took actions on behalf of his client (MSG) and his own law firm that did precisely what the court order forbade." *Id.* at 15; Attorney Fee Opinion (Complaint, Ex. B) at 2.

    (f)   "acted in contempt of the [Restraining Order] entered on August 22, 2008." Contempt Opinion at 16; Attorney Fee Opinion at 2.

The State Court found that the Debtor's law firm (which the Debtor controlled) and MSG had caused Morris $1,368,000 in damages.[2]  Contempt Opinion at 12-14, 17-19.  It also found that the Debtor's acts in contempt of court had caused Morris damages in legal fees and costs. *Id.*, 16, 21.  It found the Debtor liable for "$349,416 in attorney fees and $14,090.77 in court costs to Morris."  Attorney Fee Opinion at 5-11.

It is this contempt award for compensatory costs and attorneys' fees (the "Claim") that is the basis of the matter in front of this Court.  The Claim is evidenced by (1) the civil contempt finding against the Debtor detailed in the Contempt Opinion; (2) the actual award of attorneys' fees and costs detailed in the Attorney Fee Opinion; and (3) a final judgment for Morris and against Charron in the amount of $363,506.77 ("Final Judgment," Complaint, Ex. C).  Morris's award was partially offset by a judgment in favor of Charron in the amount of $22,443.77 in Case 09-01878 pursuant to Michigan's offer of judgment rule.  These judgments net to $341,063.00, which represents the amount of the Claim.

---

[2] That very day, the Debtor faxed a certificate to the state, dissolving his law firm rendering the award of these damages worthless.

The Claim is final, in that all appeals have been exhausted.  The Michigan Court of Appeals affirmed the State Court's opinions, and the Michigan Supreme Court declined leave for any further appeals.  *Morris v. Schnoor*, Nos. 315006, 315007, 315702, and 315742, 2014 WL 2355705 (Mich. Ct. App. May 29, 2014) (copy attached as exhibit H to Debtor's motion for summary judgment); *Morris v. Schnoor*, 859 N.W.2d 514 (Mich. 2015).  Charron acknowledges that all appeals are complete.  (Bankruptcy case, Doc. No. 24, p. 5 of 7.)

## III.  LEGAL STANDARDS

### A.  Summary Judgment standard.

Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, states that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

The initial burden to demonstrate the absence of a genuine dispute of material fact is on the moving party.  Upon such a showing, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine dispute of material fact for trial.  All facts and related inferences are to be viewed in the light most favorable to the non-moving party.  However, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Trost v. Trost (In re Trost)*, 510 B.R. 140, 149 (Bankr. W.D. Mich. 2014) (citations, alterations, and internal quotation marks omitted).

### B.  Non-dischargeability standard for violation of court orders.

#### 1.  Non-dischargeability standard under 11 U.S.C. § 523(a)(6) generally.

For the discharge exception under § 523(a)(6) to apply, a debtor must:   (1) "will or desire harm[;]" or (2) "believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10

(6th Cir. 1999). The Supreme Court has said that "nondischargeability [under this subsection] takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). This court has created a non-exclusive list of the "types of misconduct [that] satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." *Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 5 & n.2 (6th Cir. 2004) (collecting cases). "[T]he injury must invade the creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'"

*Musili v. Droomers (In re Musili)*, 379 Fed. Appx. 494, 498 (6th Cir. 2010). The Plaintiff must establish these elements by a preponderance of the evidence. *Trost*, 510 B.R at 149.

2. **Debts incurred for violation of protective court orders are almost always non-dischargeable under 11 U.S.C. § 523(a)(6).**

Most Sixth Circuit "cases dealing specifically with the dischargeability of contempt judgments have been decided [] under § 523(a)(6), and have uniformly held that such judgments may constitute a nondischargeable debt." *Lowry v. Nicodemus (In re Nicodemus)*, 497 B.R. 852, 859-60 (B.A.P. 6th Cir. 2013) (collecting Sixth Circuit cases). "Other circuits have reached the same conclusion under § 523(a)(6)." *Id.* at 860 (collecting non-Sixth Circuit cases). Indeed, some courts have even held that debts incurred by a debtor's violation of a protective order are *per se* nondischargeable because the debtor was warned *precisely* of what not to do. The *Behn* court explained why, albeit in the context of violation of a federal restraining order.

Specifically, when a court of the United States . . . issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order (as is proven either in the bankruptcy court or (so long as there was a full and fair opportunity to litigate the questions of volition and violation) in the issuing court) are *ipso facto* the result of a "willful and malicious injury."

This is because what is "just" or "unjust" conduct as between the parties has been defined by the court. That is what a court of law

does in certain injunctions. An intentional violation of the order is necessarily without "just cause or excuse" and cannot be viewed as not having the intention to cause the very harm to the protected persons that order was designed to prevent.

There are three safeguards for any debtor in this formulation. Firstly, the injunction or other protective order would, by law, have been issued in a judicial proceeding in which the debtor was a party who received at least the protections of Rule 65 F.R.Civ.P., if not more. Secondly, the violation was shown to have been intentional. And lastly, the elements of and size of the award were determined in accordance with well-settled standards applying to contempts. That these three safeguards were provided in this case is beyond this Court's power to review, for the earlier orders are final.

The subject matter of the injunction is irrelevant so long as the plaintiff in the § 523(a)(6) action was a protected party under the order. It makes no difference whether, for example, the order protected the right of clinics or others to provide lawful medical procedures to its patients, or protected a woman from unwanted contact with an estranged spouse or a stalker, or protected one charged with a crime from being accosted by the father of the victim, or protected a business from disparagement of its name, or protected a litigant from suffering its opponent's placing the object of the litigation out of reach.

So long as the federal court with jurisdiction over the person who later files bankruptcy, has issued an order for the protection of someone else, and has communicated it clearly to the contemnor, then an intentional violation is not only willful, but is also "malicious" per se. The federal court has told the defendant the point at which lawful activity becomes "harm" under the law. To intend the violation is to intend the harm. What "cause" or "excuse" might be "just" was considered by the court in fashioning the protective order, and is not to be re-litigated when deciding whether the violation was intentional.

Indeed, few debtors who are the subject of § 523(a)(6) complaints are so fortunate as to have been told by a federal court what actions would or would not be "just," before she acts. Nothing more could be asked of a bankruptcy process that is designed to protect the debtor that is not merely "honest," but is also "unfortunate.

*Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229, 238-39 (Bankr. W.D.N.Y. 1999) (footnotes omitted and underlining added). This reasoning applies to violation of a state court protective order, where similar protections apply.

### 3. Debts that are non-dischargeable under 11 U.S.C. § 523(a)(6) include "any liability arising" from the prohibited conduct.

All debts that occur when a debtor violates a protective court order are not dischargeable. In other words, awards of attorneys' fees and the like are not dischargeable if they flow in any way from the violation. Indeed, the Supreme Court has held that such a reading is not only plausible, but mandatory, when it analyzed another subsection of § 523.

> Section 523(a) defines several categories of liabilities that are excepted from discharge, and the words "debt for" introduce many of them, viz., "debt . . . for a tax or a customs duty . . . with respect to which a return . . . was not filed," § 523(a)(1)(B)(i), "debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," § 523(a)(4), "debt . . . for willful and malicious injury by the debtor to another entity," § 523(a) (6), and "debt . . . for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated," § 523(a)(9). None of these use "debt for" in the restitutionary sense of "liability on a claim to obtain"; it makes little sense to speak of "liability on a claim to obtain willful and malicious injury" or "liability on a claim to obtain fraud or defalcation." Instead, "debt for" is used throughout to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like . . ., connoting broadly any liability arising from the specified object . . . .
>
> Because each use of "debt for" in § 523(a) serves the identical function of introducing a category of nondischargeable debt, the presumption that equivalent words have equivalent meaning when repeated in the same statute . . ., has particular resonance here. And contrary to petitioner's submission, it is of no moment that "debt for" in § 523(a)(2)(A) has as its immediate object a commodity (money, property, etc.), but in some of the other exceptions has as its immediate object a description of misconduct, *e.g.*, § 523(a)(4) ("debt for fraud or defalcation [by a] fiduciary"). Section 523(a)(2)(A) also describes misconduct ("false pretenses, a false representation, or actual fraud"), even if it first specifies the result of that conduct (money, property, etc., obtained). The

> exception in § 523(a)(9) is framed in the same way, initially specifying an outcome as the immediate object of "debt for" ("death or personal injury"), and subsequently describing the misconduct giving rise to that outcome ("operation of a motor vehicle [while] intoxicated"). It is clear that "debt for" in that provision means "debt arising from" or "debt on account of," and it follows that "debt for" has the same meaning in § 523(a)(2)(A). When construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud.

*Cohen v. de la Cruz*, 523 U.S. 213, 219-21 (1998).

Thus, when a clear violation of a court's protective order has been proven, sanctions for legal fees and costs a debtor may incur in connection with the violation are non-dischargeable, even if no other injury has been shown. *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 738 (B.A.P. 9th Cir. 2009) ("Established case law holds that a debtor's obligation for attorneys fees and costs is excepted from discharge under section 523(a)(6) as a 'debt for' debtor's willful and malicious injury when awarded by the state court 'with respect to' or 'by reason of' the same underlying conduct that precluded discharge of the underlying compensatory damages award."); *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 452 (Bankr. N.D. Cal. 2005) ("This court concludes that, under *Cohen v. de la Cruz*, Debtor's obligation to pay sanctions, attorney fees and cost to Plaintiffs is also nondischargeable under section 523(a)(6).")

### C.    Application of collateral estoppel to nondischargeability actions.

> Collateral estoppel, also referred to as issue preclusion, precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action. The whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed. When the requirements of collateral estoppel are met, application of the doctrine encourages the parties to present their best arguments on the issues in question in the first instance and thereby save[s] judicial time. If a party decides not to present facts or their best arguments at trial, adverse

> collateral estoppel consequences may result in subsequent bankruptcy litigation.

*Trost*, 510 B.R. at 150 (citations, alterations, emphasis, and internal quotation marks omitted).

> Collateral estoppel will apply where (1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue, and (2) the issue was fully and fairly litigated in state court.
>
> Under Michigan law, collateral estoppel precludes the relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was actually litigated and necessarily determined.  An issue is actually litigated if it is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact.  An issue is necessarily determined if it is essential to the judgment.

*Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461-62 (6th Cir. 1999) (citations and footnotes omitted).

Collateral estoppel may be used to establish nondischargeability under § 523(a)(6). *Musili*, 379 Fed. Appx. at 498-500; *Trost*, 510 B.R. at 150-52.  Here, collateral estoppel will apply if the "actual findings that were necessary to the prior determination . . . convincingly establish that the Defendants' actions were also willful and malicious under § 523(a)(6)."  *Trost*, 510 B.R. at 152.

Even if it is not entirely certain that collateral estoppel applies, summary judgment still should be entered against a debtor if the record makes it "clear that the actions taken by [the debtor] that led to [his] being held in contempt by the state court constitute willful and malicious injury."  *Musili*, 279 Fed. Appx. at 498.  The record is clear if it shows that the state court held that the debtor's "transfer of funds . . . was in 'willful disregard or disobedience of a court order[,'] that the contempt of court had directly damaged [a person]," and that the debtor "knew that [his] violation of the court order and the transferring of the assets" would injure the person."

*Id.* at 497; *see also Behn*, 242 B.R. at 238-39 (holding that a violation of a clearly communicated restraining order is a *per se* violation and may not be relitigated).

> **D.**     **Putting it all together – the *Musilli* case.**

The Sixth Circuit *Musilli* case puts all of these factors together and is almost directly on point with the circumstances presently before the Court.  379 Fed. Appx. 494.  In *Musilli*, two attorneys, Musilli and Baumgardner, were shareholders in a law firm.  *Id.* at 495.  The firm successfully represented plaintiffs in a suit against General Motors, earning over $1 million for doing so.  *Id.*  Warren Droomers[3] believed he was entitled to a referral fee for the case, and so he filed a state court lawsuit against the firm to collect it.  *Id.*

Droomers asked the court to order that the amount at issue be placed in escrow during the suit.  *Id.*  The court did so, but the firm did not comply.  *Id.*  Instead, the firm transferred money to its shareholders, including Musilli and Baumgardner.  *Id.*  The state court eventually found for Droomers on a theory of quantum meruit.  *Id.*

The court held a hearing to determine whether Musilli and Baumgardner should be held in contempt for failing to comply with its protective escrow order.  *Id.*  The court ruled at the hearing that Musilli and Baumgardner "flagrantly violated" its order, awarding Droomers damages.  *Id.* at 496.  That same day, Musilli's and Baumgardner's law firm filed for bankruptcy protection.  *Id.*

Droomers, Musilli, and Baumgardner entered into a settlement, wherein Musilli and Baumgardner would each pay Droomers $100,000 and the case would be dismissed.  *Id.*  Droomers performed her end of the bargain.  *Id.*  Rather than comply with their part of the

---

[3] Warren passed away during the litigation and was succeeded as a plaintiff by his wife, Barbara.  Here, "Droomers" refers alternately to Warren or Barbara, as appropriate.

settlement, however, Musilli and Baumgardner filed suit in federal court, asserting extortion and other claims.  *Id.*  The federal suit was dismissed as frivolous and the state suit reinstated.  *Id.*

Shortly thereafter, Musilli and Baumgardner each filed for bankruptcy protection.  *Id.*  Droomers filed an adversary proceeding to have their collective debt to her declared nondischargeable.  *Id.*  The bankruptcy court did not enter a definitive finding regarding whether collateral estoppel applied, but found that the requirements of § 523(a)(6) had been met, and thus held the debt to Droomers nondischargeable.  *Id.*

> The bankruptcy court found that the Michigan courts held that the appellants' transfer of funds from the firm was in "willful disregard or disobedience of a court order" and that the contempt of court had directly damaged Droomers.  Further, it found that "[t]he record establishes that Musilli and Baumgardner knew that their violation of the court order and the transferring of the assets of [the firm] to themselves and others would injure Droomers."

*Id.* at 496-97.  The matter was upheld on appeal to the District Court.  *Id.* at 497

On review, the Sixth Circuit noted that "For the discharge exception under § 523(a)(6) to apply, a debtor must: (1) 'will or desire harm;' or (2) 'believe injury is substantially certain to occur as a result of his behavior.'"  *Id.* at 498 (quoting *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10 (6th Cir. 1999)) (alterations omitted).  The Sixth Circuit agreed that there was some question as to whether collateral estoppel applied, yet nonetheless "it is clear that the actions taken by Musilli and Baumgardner that led to their being held in contempt by the state court constitute willful and malicious injury."  *Id.*  The court found "that the [state] court's escrow order made clear that 'injury was substantially certain to occur should Musilli and Baumgardner violate it."  *Id.* at 499 (alterations omitted).

> Musilli and Baumgardner point to no facts in the record that refute this finding.  Despite having clear instructions from the court that the firm was to escrow funds sufficient to cover a judgment against it, Musilli and Baumgardner transferred all of the firm's assets away from the firm, including transferring a significant amount of

> money to themselves. The appellants directly violated the court order and have offered no legitimate justification that might explain why their actions were not willful and malicious. Therefore, we affirm the bankruptcy court's grant of summary judgment for Droomers on her claim that the debt is nondischargeable under § 523(a)(6).

*Id.* Thus, even where application of collateral estoppel was not entirely clear, where the record made it clear that licensed attorneys had violated a court order, knowing that doing so would hurt an opposing litigant, the debts they incurred as a result were nondischargeable.

## IV.   <u>ARGUMENT</u>

Here, the situation is very similar to that described in *Musillii*. The state court ordered Schnoor not to transfer MSG's assets outside of the ordinary course of business. Contempt Opinion at 4. The order bound the Debtor, Schnoor's attorney, and the Debtor knew that. *Id.* at 5-7, 15. Despite this knowledge, the Debtor transferred away all of MSG's assets, committing "a textbook example of contempt of court," in that he "recognized that a court order prohibited all transfers of MSG's assets outside the ordinary course of business . . . yet took actions on behalf of his client (MSG) and his own law firm that did precisely what the court order forbade." *Id.* at 15.

Violation of the court order was certain to cause harm, as the Debtor, a licensed attorney, well knew. *Id.* at 5-7, 15-16; *Behn*, 242 B.R.at 238-39; *Musilli*, 379 Fed. Appx. at 499; *Nicodemus*, 497 B.R. at 859-60. The fact that some damages were also awarded against the Debtor's law firm and MSG does not render the contempt sanctions against the Debtor any less a result of the Debtor's bad acts. *Cohen*, 523 U.S. at 219-21; *Suarez*, 400 B.R. at 738; *Braun*, 327 B.R. 447 at 452. The contempt sanctions were compensation for an injury, one which the Debtor willfully and maliciously inflicted. As such, the contempt sanctions are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The issue of whether Charron violated the Restraining Order was essential to the contempt finding, was litigated thoroughly between the same parties before the Court today, and culminated in a valid and final judgment. *Morris*, 2014 WL 2355705; *Morris*, 859 N.W.2d at 514; *Markowitz*, 190 F.3d at 461-62. As such, it has preclusive effect. *Markowitz*, 190 F.3d at 461-62. Even if questions should remain regarding the application of collateral estoppel, the state court record was sufficiently established to support entry of a judgment of nondischargability. *Musilli*, 379 Fed. Appx. at 498.

## V.   <u>CONCLUSION</u>

Notwithstanding the Debtor's attempt to confuse matters, this case is pretty simple. The state court told the Debtor what he was not do. He did it anyway, knowing harm would result (and, quite likely, hoping that harm would occur). He now must live with the consequences of his choices. He has tried unsuccessfully to justify his actions to several courts. He will be equally unsuccessful explaining his actions here.

For the reasons stated herein, Morris asks that the Court enter summary judgment in his favor on the nondischargeability complaint, and grant such further relief as may be just. A proposed order to this effect is attached as Exhibit 2.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:   /s/ Ronald A. Spinner
     Stanley J. Stek (P29332)
     Eric D. Carlson (P60277)
     Ronald A. Spinner (P73198)
     Attorneys for Plaintiffs
     150 West Jefferson, Suite 2500
     Detroit, MI  48226
     (313) 496-7829
     spinner@millercanfield.com

Dated:  May 29, 2015