UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br>DAVID W. CHARRON,<br>        Debtor. | Case No. 14-07970<br>Chapter 7<br>Honorable James W. Boyd |
| GLENN S. MORRIS and THE GLENN S. MORRIS TRUST,<br>        Plaintiffs,<br>v.<br>DAVID W. CHARRON,<br>        Defendant. | Adversary Proceeding No. 15-80086-JWB |

**GLENN S. MORRIS'S RESPONSE TO
DEBTOR'S MOTION FOR SUMMARY JUDGMENT[1]**

David W. Charron ("Debtor") violated a state court order restraining the transfer of assets from an entity whose status was pending before the state court ("MSG"). After a lengthy hearing, the state court concluded this was a "textbook example of contempt of court by Attorney Charron, who recognized that a court order prohibited all transfers of MSG's assets outside the ordinary course of business . . . yet took actions on behalf of his client (MSG) and his own law firm that did precisely what the court order forbade."

Plaintiff Glenn Morris, individually and as trustee for the Glenn S. Morris Trust (collectively, "Morris") suffered losses as a result of the Debtor's actions. Morris's security interest in MSG's stock was rendered worthless, and Morris was required to expend significant funds litigating the Debtor's violation. The Debtor had multiple roles in the proceedings—

---

[1] On a procedural note, this response is timely. The Debtor's motion was filed and served on May 13. (Doc. Nos. 4, 5.) Although the Debtor failed to include a notice with his motion, the response ostensibly should be due fourteen days from the date of service, or May 29. LBR 9013-1(c)(1). The Bankruptcy Rules provide for an extra three days when service is provided electronically, as it was here. Fed. R. Bankr. P. 9006(f); Fed. R. Civ. P. 5(b)(2)(E). As that day falls on a Saturday, the due date is advanced to the next business day. Fed. R. Bankr. P. 9006(a)(1). This response is thus due by Monday, June 1.

attorney, creditor, contemnor—so when the state court ultimately ruled against the Debtor, it carefully parsed out the damages it awarded against the Debtor and the entities he controlled and represented. The debt at issue in this matter was awarded against the Debtor personally as compensation for the fees and costs Morris incurred in the Debtor's contempt proceeding.

Now before this Court is Morris's complaint to declare as nondischargeable the Debtor's obligation to Morris ordered by the Court as arising from Charron's contempt of Court. Both parties have filed for summary judgment with regards to this complaint, each relying on the strength of the state court findings. While the Plaintiff could combine his response to the Debtor's motion with his cross-motion for summary judgment, such an approach could confuse the record in this case. To keep the record clean without adding repetition, the Plaintiff here summarizes his objection to the Debtor's motion and relies further on the reasons stated in his cross-motion for summary judgment and supporting brief which were filed contemporaneously with this objection. (Doc. No. 6.)

The Debtor's motion for summary judgment glosses over the applicable standards for nondischargeability actions and repeats arguments rejected by the state trial and appellate courts, hoping to distract from the fact that he blatantly violated the state court's no transfer order, knowing that this would cause injury. It is important to note that the Debtor never denies violating the court's no asset transfer order. Rather, the Debtor argues that, when he violated the order, he was wearing his "firm" hat, not his "personal" hat, and thus his violation should be attributable only to his law firm, not him personally (notwithstanding that the state court held him personally liable to compensate Morris for the legal fees expended in bringing the Debtor to justice).

The Debtor's creative argument ("It was not <u>me</u>…it was the <u>other</u> me!") ignores bankruptcy law to the contrary. It is undisputed that the Debtor violated a state court order, and that compensatory contempt sanctions were entered against him. As explained in Morris's motion for summary judgment, debts incurred for violations of court protective orders are almost always non-dischargeable under 11 U.S.C. § 523(a)(6) in the Sixth Circuit. *Lowry v. Nicodemus (In re Nicodemus)*, 497 B.R. 852 (B.A.P. 6th Cir. 2013). Debtors that violate such orders are warned *precisely* what acts will cause injury, yet do them anyway. *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229 (Bankr. W.D.N.Y. 1999). Following *Cohen v. de la Cruz*, 523 U.S. 213 (1998), bankruptcy courts hold that debts incurred in the violation of such orders include "any liability arising" from the prohibited conduct, and thus obligations such as attorneys' fees are nondischargeable. These debts are nondischargeable even in the absence of any other proven injury. *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447 (Bankr. N.D. Cal. 2005); *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732 (B.A.P. 9th Cir. 2009). Indeed, a recent Sixth Circuit case involving facts similar to those here affirmed as nondischargeable debts that attorneys incurred when their firm disobeyed a Michigan Circuit Court's order to escrow assets pending a trial. *Musili v. Droomers (In re Musili)*, 379 Fed. Appx. 494 (6th Cir. 2010). Thus, the Debtor's discussion of Michigan's tort fault apportionment statute and the exact manner in which damages were apportioned misses the point, focusing on issues of no moment to the question this Court is asked to address.

Indeed, the question here is not "which entities were assessed which damages for the Debtor's misconduct?" Rather, it is simply this: was the state court's contempt award against the Debtor a debt resulting from the Debtor's actions, and did the Debtor "believe injury [wa]s substantially certain to occur as a result of his behavior?" *Musili*, 379 Fed. Appx. at 498

(quoting *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10 (6th Cir. 1999)).  For the Debtor to prevail on summary judgment, he must show that the state court determined to the contrary, that this finding requires invocation of the doctrine of collateral estoppel, and that there is otherwise no genuine issue of material fact as regards the issue.  As explained in the cross-motion, however, the state trial court found (and the appellate court upheld on appeal) to the contrary.  It determined that the Debtor, a licensed attorney, knowingly violated the state trial court's order not to transfer assets.  Because the protective order spelled out the conduct that would be harmful (*i.e.,*, transfer of MSG's assets), the Debtor was on notice that undertaking that conduct was certain to cause harm.  The harm from the Debtor's violation encompasses the loss of assets the Debtor transferred away *and* the legal fees spent in bringing him to justice.  Thus, the contempt award at issue here, representing a compensatory award for legal fees incurred as a result of the Debtor's malfeasance, is a debt for an injury the Debtor willfully and maliciously inflicted.  The Debtor is not entitled to a summary judgment to the contrary.

These questions were thoroughly litigated, determined against the Debtor, and the rulings upheld in appeal.  Thus, the findings are entitled to preclusive effect.  Even were there any doubt as to the preclusive effect of the state court proceedings, however, *Musilli* teaches that where, as here, the record makes it clear that a debtor's actions that led to a contempt sanction "constitute willful and malicious injury," summary judgment should be entered against a debtor.  In sum, the facts and case law are more than sufficient to deny the Debtor summary judgment in this matter.  And, as explained in the cross-motion for summary judgment, they are more than sufficient to support an entry of summary judgment against him.

For these reasons, and for the reasons set forth in the contemporaneously-filed cross-motion for summary judgment , Morris, by his attorneys, Miller, Canfield, Paddock and Stone,

P.L.C., requests that the Court DENY the Debtor's motion for summary judgment and grant such further relief as may be just.

                              Respectfully submitted,

                              MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

                              By:   /s/ Ronald A. Spinner
                                      Stanley J. Stek (P29332)
                                      Eric D. Carlson (P60277)
                                      Ronald A. Spinner (P73198)
                                      Attorneys for Plaintiffs
                                      150 West Jefferson, Suite 2500
                                      Detroit, MI  48226
                                      (313) 496-7829
                                      spinner@millercanfield.com

Dated:  May 29, 2015