**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

**IN RE**

DAVID W. CHARRON,                                          Case No. 14-7970-swd
                                                           Chapter 7
                                                           Honorable James W. Boyd

        Debtor.

———————————————————————

GLENN S. MORRIS AND
THE GLENN S. MORRIS TRUST,

        Plaintiffs/Appellees,

v.                                                         Adversary Proceeding No. 15-80086

DAVID W. CHARRON,

        Defendant/Appellant.

———————————————————————

## CLERK'S NOTICE REGARDING RECORD ON APPEAL

The appellant in the above referenced adversary proceeding filed a notice of appeal on **December 08, 2015** regarding the **Order Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment** and the **Opinion Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment** signed and entered on the court's docket **September 30, 2015** and the **Memorandum Opinion Denying Debtor-Defendant's Motions to Amend the Court's Findings Under Rule 52, Amend Judgment Under Rule 59, and for Reconsideration Under Rule 60** and the **Order Denying Debtor-Defendant's Motion to Amend the Court's Findings Under Rule 52 and Amend Judgment Under Rule 59** and the **Order Denying Debtor-Defendant's Motion for Reconsideration Under Rule 60** signed and entered on the court's docket **November 25, 2015**.

Notice is given to the appellants that the appellants shall, **within 14 days** from the date the notice of appeal was filed, file with the Clerk of the U.S. Bankruptcy Court, and serve on the appellee, the following:

1. A Statement of Issues;
2. A Designation of items to be included in the record on appeal, and;
3. A copy of any written request to produce a transcript.

Notice is hereby given to the appellee that **within 14 days** after service of the statement of issues and designation of the appellants, the appellee may file with the court and serve on the appellants, a designation of additional items to be included in the record on appeal.  If the

appellee files a cross appeal, the appellants shall have an additional 14 days from date of service to serve and file a list of additional items to be included in the record.

Pursuant to Fed.R.Bankr.P. 8009, parties must take action to enable the Clerk to assemble and transmit the record on appeal to the U.S. District Court or the Bankruptcy Appellate Panel in a timely manner.  In most cases, appeals will be transmitted to the U.S. District Court or the Bankruptcy Appellate Panel within 30 days after the notice of appeal is filed.

Failure to comply with applicable time limits or other requirements set forth in Fed.R.Bankr.P. 8001, et seq., may prompt the Clerk to request the U.S. District Court or the Bankruptcy Appellate Panel to enter an order dismissing the appeal, or such other action as the U.S. District Court or the Bankruptcy Appellate Panel deem proper.

**Dated:** December 10, 2015                    **Daniel M. LaVille, Clerk**
                                                **United States Bankruptcy Court**


                                                **By**: /s/_____
                                                **Kristen A. Parent, Deputy Clerk**


<u>**CERTIFICATE OF MAILING**</u>


A copy of this Notice Regarding Record on Appeal was served pursuant to CM/ECF electronic notification procedures on **December 10, 2015** upon Stanley J. Stek, Esq., Eric D. Carlson, Esq., Ronald A. Spinner, Esq., Perry G. Pastula, Esq., Matthew Cheney, Esq., and Office of the U.S. Trustee.  The Notice of Appeal was transmitted to the Clerk of the U.S. District Court on **December 10 , 2015**.

**Dated:** December 10, 2015                    **By:** /s/_____
                                                **Kristen A. Parent, Deputy Clerk**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN
———————————

In re:

DAVID W. CHARRON,                                    Case No: BG 14-07970
                                                     Chapter 7
        Debtor.

———————————————————/

GLENN S. MORRIS and THE GLENN S.
MORRIS TRUST,
                                                     Adversary Proceeding
        Plaintiffs,                                  No. 15-80086
v.

DAVID W. CHARRON,

        Defendant.

———————————————————/

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1.    Name(s) of appellant(s):
      David W. Charron _____

2.    Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
■ Defendant
☐ Other (describe)_____

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
☐ Creditor
☐ Trustee
☐ Other (describe) _____

### Part 2: Identify the subject of this appeal

1.    Describe the judgment, order, or decree appealed from:  Order Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment and a Memorandum Opinion Denying Debtor/Defendant's Motions to Amend the Court's Findings Under Rule 52, Amend Judgment Under Rule 59, and for Reconsideration Under Rule 60.

2.    State the date on which the judgment, order, or decree was entered: September 30, 2015 and November 25, 2015.

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.  Party:        Glenn S. Morris

    Attorney:     Stanley J. Stek (P29332)
                  Eric D. Carlson (P60277)
                  Ronald A. Spinner (P73198)
                  150 West Jefferson, Suite 2500
                  Detroit, MI 48226

2.  Party:        The Glenn S. Morris Trust

    Attorney:     Stanley J. Stek (P29332)
                  Eric D. Carlson (P60277)
                  Ronald A. Spinner (P73198)
                  150 West Jefferson, Suite 2500
                  Detroit, MI 48226

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ (Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Date:  12/8/15

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

Perry G. Pastula ( P35588)
Dunn, Schouten & Snoap, PC
Attorneys for David W. Charron
2745 DeHoop Ave SW
Wyoming, MI  49509
(616) 538-6380

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In re:

DAVID W. CHARRON,

     Debtor.

_____/

GLENN S. MORRIS and THE GLENN S.
MORRIS TRUST,

     Plaintiffs,

v.

DAVID W. CHARRON,

     Defendant.

_____/

Case No: BG 14-07970
Chapter 7

Adversary Proceeding
No. 15-80086

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

PRESENT:  HONORABLE JAMES W. BOYD
United States Bankruptcy Judge

In accordance with an Opinion Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment, entered on this date, which reasoning is incorporated herein;

NOW, THEREFORE, IT IS HEREBY ORDERED and ADJUDGED that:

1.  The Defendant's Motion for Summary Judgment (AP Dkt. No. 4) be, and hereby is, DENIED.

2.  The Plaintiffs' Cross Motion for Summary Judgment (AP Dkt. No. 6) be, and hereby is, GRANTED.

3.  The debt owed by the Defendant to the Plaintiffs under the Opinion and Order Setting Forth Findings of Civil Contempt, Opinion and Order Awarding Attorney Fees, and Final Judgment, entered by the Kent County Circuit Court, be, and hereby is, nondischargeable under 11 U.S.C. § 523(a)(6).

4. Entry of this nondischargeable debt judgment is without prejudice to either party's right to seek further relief under state law, including the Defendant's right to seek relief from the automatic stay and to pursue an appeal of the amount of the contempt damage award to the extent permitted by applicable state law.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to FED. R. BANKR. P. 9022 and LBR 5005-4 upon the Defendant; Ronald A. Spinner, Esq., attorney for the Plaintiffs, and Perry G. Pastula, Esq., attorney for the Defendant.

**END OF ORDER**

**IT IS SO ORDERED.**

**Dated September 30, 2015**



James W. Boyd
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

DAVID W. CHARRON,

      Debtor.

Case No: BG 14-07970
Chapter 7

_____/

GLENN S. MORRIS and THE GLENN S.
MORRIS TRUST,

      Plaintiffs,

v.

DAVID W. CHARRON,

      Defendant.

Adversary Proceeding
No. 15-80086

_____/


**<u>OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT</u>**

<u>Appearances:</u>

Ronald A. Spinner, Esq., Detroit, Michigan, attorney for Glenn S. Morris and the Glenn S.
      Morris Trust, Plaintiffs.

Perry G. Pastula, Esq., Wyoming, Michigan, attorney for David W. Charron, Debtor-
      Defendant.


I.        <u>INTRODUCTION AND ISSUE PRESENTED</u>.

      This adversary proceeding arises from prepetition litigation that the Kent County

Circuit Court described as "protracted," "ruinous," and a "testament to the folly of all-out

warfare in the civil justice system."[1]  During the course of that litigation, David W. Charron

---

[1]    <u>See</u> Opinion and Order Awarding Attorney Fees to the Plaintiff Glenn S. Morris and
Against Attorney David W. Charron, AP Dkt. No 4, Exh. C at 2, 11.

(the "Debtor" or "Attorney Charron"), as lead counsel for one or more of the parties, was held in civil contempt for violating a court order and was ordered to pay Glenn S. Morris (collectively, in his individual capacity and as trustee for The Glenn S. Morris Trust, the "Plaintiff" or "Morris") $363,506.77 in civil contempt sanctions.  In this adversary proceeding, Morris seeks a determination that the civil contempt sanctions are excepted from the Debtor's chapter 7 discharge under § 523(a)(6) of the Bankruptcy Code.[2]

The Debtor has filed a motion for summary judgment, arguing that the contempt award was not compensation for injury to the Plaintiff or his property, and is therefore dischargeable.  The Plaintiff has filed a cross motion for summary judgment, asserting that the state court contempt judgment establishes the "willful" and "malicious" nature of the debt under § 523(a)(6) and the doctrine of collateral estoppel.  For the reasons that follow, the court shall deny the Defendant's motion for summary judgment and grant the Plaintiff's cross motion.

## II.    JURISDICTION.

The court has jurisdiction over this bankruptcy case.  28 U.S.C. § 1334.  The bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); L. Civ. R. 83.2(a) (W.D. Mich.).  This nondischargeable debt action is a statutory core proceeding and this court has constitutional authority to enter a final order.  28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of certain debts); see, e.g., Hart v. Southern Heritage Bank (In re Hart), 564 F. App'x 773, 776 (6th Cir. Apr. 28, 2014) (unpublished opinion) (notwithstanding the Supreme Court's decision in Stern

---

[2]     The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive.  Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

v. Marshall, __ U.S. __, 131 S. Ct. 2594 (2011), the bankruptcy court has "constitutional authority to enter a final money judgment in a dischargeability action"). Further, even Stern claims may be decided by bankruptcy courts if the parties consent. Wellness Int'l Network, Ltd. v. Sharif, __ U.S. __, 135 S. Ct. 1932 (2015). While this is not a Stern claim, the parties have consented to this court entering a final order in this adversary proceeding. See Plaintiff's Complaint, AP Dkt. No. 1 at ¶ 3 (expressly consenting to entry of a final order); Defendant's Motion for Summary Judgment, AP Dkt. No. 4 at 1 & n.1 (stating that this is a core proceeding and referencing Plaintiff's jurisdictional statement).

### III.    FACTS AND PROCEDURAL BACKGROUND.

The contempt order at issue in this adversary proceeding arises from the Debtor's representation of R. Judd Schnoor ("Schnoor") and the insurance agency of Morris, Schnoor & Gremel, Inc. ("MSG") in various state court cases.[3] In July 2007, Morris filed a law suit in the Kent County Circuit Court, seeking dissolution of MSG, an entity which Morris and Schnoor owned as equal partners. (Exh. B at 2; Exh. H at 4.) The state court ultimately ordered Morris to sell his MSG stock to Schnoor for $2.5 million. (Exh. B at 2.) In return, Schnoor gave Morris a down payment of approximately $235,000 and a promissory note for the balance. (Id. at 2-3.) Morris retained a security interest in the MSG stock, but not the company's assets. (Id. at 3.)

---

[3]    The relevant portions of the state court record were attached as exhibits to the Debtor's motion for summary judgment in this adversary proceeding. (See AP Dkt. No. 4.) The exhibits are cited herein as "Exh. __." The majority of this court's factual findings are based on Exh. B. (Kent County Circuit Court Opinion and Order Setting Forth Findings of Civil Contempt, dated December 27, 2012) and Exh. H (Michigan Court of Appeals opinion affirming the circuit court's contempt findings, dated May 29, 2014).

Schnoor made some payments under the promissory note, but eventually became disgruntled with Morris and ceased making payments in the spring of 2008. (Id.) On August 20, 2008, the state court held a hearing to determine whether Schnoor should be held in contempt for his failure to make payments under the promissory note. (Id.) At the hearing, the parties agreed to entry of an order enjoining the transfer of MSG assets. (Id.) The Debtor appeared as counsel for Schnoor at the hearing. (Id.) When the court asked him if he had any objection to "maintaining the status quo for a week or two," the Debtor responded, "Not for a week or two, your Honor." (Id.) Consistent with the parties' agreement, the state court entered an order on August 22, 2008, stating:

> IT IS FURTHER ORDERED that Defendant R. Judd Schnoor shall not transfer assets of Morris, Schnoor & Gremel, Inc., outside the ordinary course of business without authorization from the Court to do so.

(Id. at 4, sometimes referred to herein as the "Injunctive Order".) At a subsequent hearing, counsel for Morris requested that the August 22, 2008, order remain in effect until further order of the court. (Id.) No party, including the Debtor, objected, and the state court granted that request. (Id.) In so doing, the court noted that the Injunctive Order, as originally drafted, did not contain any time restrictions and was intended to continue until the court ordered otherwise. (Id.)

While the state court action against Schnoor remained pending, and despite the court order enjoining the transfer of MSG's assets, Schnoor and the Debtor undertook efforts to sell MSG's assets to a friendly buyer. (Id.) In November 2008, the assets were transferred to New York Private Insurance Agency, LLC ("NYPIA"), in transactions orchestrated by the Debtor and Schnoor. (Id. at 1, 4-6.) The Debtor's law firm, Charron & Hanisch, P.L.C. ("C&H"), "served as a middleman" in the sale by initially taking

possession of MSG's assets pursuant to a security interest C&H held for repayment of attorney's fees. (Id. at 6.) After obtaining possession of the assets, C&H sold the assets to NYPIA. (Id.) When these transactions occurred, the August 22, 2008, Injunctive Order remained in effect. (Id. at 6.)

The transfer of the MSG assets triggered much subsequent litigation. In February 2009, the Plaintiff filed a verified complaint against MSG, C&H, NYPIA, and the Debtor individually in the state court, asserting fraudulent transfer, "commercially unreasonable sale," fraud, and conversion causes of action relating to the transfer of the MSG assets to C&H and/or NYPIA. (Exh. G.) The Debtor filed a motion for summary judgment on the claims against him personally, and the state court granted that motion. The court held that, "[a]lthough Attorney David Charron was integrally involved in the transactions that gave rise to this lawsuit," there was no basis on which to hold the Debtor personally liable for fraud or conversion of the MSG assets. (Exh. F at 10.) The dismissal of the claims raised by the Plaintiff against the Debtor in the 2009 lawsuit was upheld on appeal. (Exh. H.)

In addition, on May 19, 2011, the Kent County Circuit Court entered an order requiring Schnoor, MSG, the Debtor, C&H, and NYPIA to show cause why they should not be held in civil contempt for violating the Injunctive Order. (Exh. B at 1.) After holding a hearing and considering the parties' arguments, the state court issued a detailed Opinion and Order Setting Forth Findings of Civil Contempt against the Debtor, MSG, and C&H (the "Contempt Opinion").[4] (Exh. B.)

---

[4]    The state court noted that Schnoor filed a bankruptcy case on January 28, 2009, and therefore was "shielded from civil liability" in the contempt action. (Exh. B at 1.)

In the Contempt Opinion, the state court specifically stated that it viewed the Debtor's possible violations of the Injunctive Order as being in the nature of civil contempt. (Id. at 10.)  As to the applicable legal standard for a finding of civil contempt, the opinion explained that Michigan law requires "clear and unequivocal" proof of the contempt, but does not require a "finding of willful disobedience of a court order."  (Id. (citing In re Contempt of Robertson, 209 Mich. App. 433, 439 (1995) and Davis v. Detroit Fin. Review Team, 296 Mich. App. 568, 625 (2012).)   Instead, the court indicated that to hold a party in civil contempt, it only needed to "'find that the [alleged contemnor] was neglectful or violated its duty to obey an order of the court.'"  (Id. at 10-11 (citing Contempt of United Stationers Supply Co., 239 Mich. App. 496, 501 (2000).)

Notwithstanding its explanation of the applicable legal standard, the state court's Contempt Opinion is replete with factual findings that the Debtor was aware of the Injunctive Order and knowingly undertook the sale of MSG's assets in violation of its terms.  For example, the court found that "Attorney Charron and Judd Schnoor were acutely aware that the sale of MSG's assets violated the court order of August 22, 2008." (Id. at 6.)  The court further found "as a fact that they understood that the sale of MSG's assets . . .  in November 2008 violated that court order."  (Id. at 8.)  As support for these findings, the court cited an October 14, 2008, email authored by the Debtor, which contained a "detailed explanation of the difficulties caused by the existing [Injunctive Order]."  (Id. at 6.)  The email acknowledges that the Injunctive Order requires court approval prior to any transfer of MSG's assets outside of the ordinary course of business. (Id. at 7.)  Given this restriction, the Debtor's email suggests that there are two options: either file a motion to obtain court approval of the transfer or transfer the assets without

court approval, and argue afterwards that the transfer was made "in the ordinary course."

(Id.)  The court found that this email "[spoke] volumes about Attorney Charron's view of

the propriety of his firm's sale" of the MSG assets.  (Id.)

Describing the Debtor's actions as the "most vexing aspect" of its contempt

analysis and discussing the Debtor's personal liability for violations of the prior court

order, the state court made the following findings of fact and conclusions of law:

> Michigan law plainly establishes that attorneys can be held in contempt of
> court both for their actions on behalf of their clients, e.g., Schumacher v
> Tidswell, 138 Mich. App. 708, 715-716, 722 (1984), and for their interactions
> with their clients.  E.g., Schoensee v Bennett, 228 Mich. App. 305, 317
> (1998).  Moreover, MCR 3.310(C)(4) makes clear that an injunctive order –
> such as the Court's order of August 22, 2008, prohibiting transfers of MSG's
> assets "outside the ordinary course of business" – binds parties and their
> attorneys alike.  Finally, the transcript of the 2008 contempt hearing reveals
> that Attorney Charron directly and actively participated in discussing the
> terms of the injunctive order . . . , so Attorney Charron cannot disclaim
> knowledge of the order.  In fact, his internal email traffic confirms that he
> was well aware of the continuing force of the Court's injunctive decree . . . .

(Id. at 15.)

Based on the Debtor's knowledge of the court's order, and his failure to abide by

it, the court concluded:

> In simple terms, the record reveals a textbook example of contempt of court
> by Attorney Charron, who *recognized that a court order prohibited all
> transfers of MSG's assets outside the ordinary course of business, yet took
> actions on behalf of his client (MSG) and his own law firm that did precisely
> what the court order forbade.*  That is, Attorney Charron siphoned all of the
> assets of MSG through his law firm and passed them on to NYPIA.  *These
> forbidden acts, when coupled with Attorney Charron's recognition of the
> impropriety of his conduct,* compel the Court to find, by clear and convincing
> evidence, that Attorney Charron acted in contempt of the court order
> entered on August 22, 2008.

(Id. at 15-16 (internal citations to the state court record omitted and emphasis added).)

The court also imputed Attorney Charron's knowledge of the Injunctive Order and violations thereof to his law firm, C&H. (Id. at 17.) In so doing, the court reiterated its prior holdings that the Debtor "actively participated in discussing the terms" of the Injunctive Order, and "fully understood" its requirements. (Id.) Despite this knowledge, Attorney Charron "knowingly took part in activities that violated" the order. (Id.)

The court determined that the appropriate sanction for C&H's contempt was to order the law firm to compensate the Plaintiff for one-half of the value of the assets that were seized and transferred in contravention of the Injunctive Order. (Id. at 18.) By contrast, the court determined that the sanction for Attorney Charron's contempt would be a "compensatory award of attorney fees, other costs, or both" for the amounts incurred by Morris in the contempt proceedings. (Id. at 16, 21 (citing Mich. Comp. Laws § 600.1721).) After a five-day evidentiary hearing on damages, the court determined that Morris had incurred $349,416.00 in attorney fees and $14,090.77 in costs during the contempt proceedings. The court entered an Opinion and Order Awarding Attorney Fees to Plaintiff Glenn S. Morris and Against Attorney David W. Charron and a Final Judgment, for this total amount, $363,506.77.[5] (Exhs. A and C, referred to collectively with the Contempt Opinion as the "Contempt Award.")

After the Circuit Court denied the Debtor's motion for reconsideration and motion for a new trial, the Debtor appealed the Contempt Opinion to the Michigan Court of Appeals. (See Exhs. D and E.) On appeal, the Debtor challenged the trial court's

---

[5]     The final judgment entered by the state court provides that the total amount of this award, is to be "credited and partially offset by a January 28, 2014 award of attorneys' fees and costs" against Morris and in favor of the Debtor in Kent County Circuit Court Case No. 09-01878-CB. (Exh. A.) The Plaintiff's complaint states that the amount of the offset is $22,443.77, making the net amount of the contempt award $341,063.00. (See AP Dkt. No. 1 at ¶ 7, 9.)

contempt ruling on several grounds, each of which were rejected by the Court of Appeals

in a lengthy written opinion issued on May 29, 2014. The Court of Appeals found no merit

in the Debtor's arguments regarding the "infirmity" of the Injunctive Order, including his

"challenge to the court's authority" to hold him, as a non-party, in contempt of court. (Exh.

H at 7.) The court also deemed the Debtor's arguments about the validity of C&H's

security interest to be a "red herring" raised to distract from the real issue, which was that

the sale of MSG's assets occurred in violation of the Injunctive Order. (Id. at 8.)

 With regard to the Debtor's assertion that the Injunctive Order applied only to

Schnoor, and not specifically to Attorney Charron, the Court of Appeals held that:

> There exists no reasonable contention, given the status of Charron and
> Charron & Hanisch as the attorneys for both Schnoor and MSG throughout
> the underlying litigation and at all times relevant to the issuance of the
> injunctive order of August 22, 2008, that they would not be bound by the
> restrictions contained within that order.
> . . . .
> The record demonstrates that both Charron and Schnoor were present in
> the trial court when imposition of the injunction was discussed, and that both
> Charron and Schnoor acknowledged under oath an awareness of the
> injunctive proscriptions, with Charron acknowledging specifically that as of
> Octover 14, 2008, he was aware and had notice of the trial court's written
> order and its legitimacy.
> . . . .
> The existence of the injunctive order, the acknowledged awareness of the
> order's content, and the binding effect of the order on Schnoor and Charron,
> by name and by professional relationship, rendered it necessary to receive
> "authorization from the Court," before effectuating the November 2008
> asset sale.

(Id. at 7-9.) The court further agreed with the trial court's conclusion that the Debtor's

October 14, 2008, email "belie[d] his contention . . . that he respected the [Injunctive

Order]." (Id. at 9.) The court noted that, in the email, "[Attorney] Charron clearly

recognizes an obligation to inform the trial court of a transfer." (Id.) The court held that

the email indicated the Debtor's knowledge of the Injunctive Order, as well as his

"understanding of the necessity for court approval of any action to be taken regarding MSG's assets."  (Id. at 9-10.)

The appellate court also rejected Attorney Charron's assertion that the injunction was originally intended to be of a shorter duration than what was ultimately ordered by the trial court.  (Id. at 10.)  The court held that, even if this assertion was true, Attorney Charron had notice of the trial court's written order and its lack of any time restrictions, as of mid-October 2008.  (Id.)  For these, and numerous other reasons set forth in the written opinion, the Michigan Court of Appeals affirmed the trial court's contempt order.[6]

On December 31, 2014, the Debtor filed a voluntary chapter 7 petition.  The Plaintiff filed this nondischargeable debt adversary proceeding on April 10, 2015.  After holding a hearing on the parties' cross motions for summary judgment on July 8, 2015, this court took the motions under advisement.

## IV.    DISCUSSION.

### A.    _Summary Judgment Standard_.

Federal Rule of Civil Procedure 56(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, governs motions for summary judgment.  The Rule provides that "[a] party may move for summary judgment,

---

[6]    In his motion for summary judgment and reply to the Plaintiff's motion, the Debtor states that a second appeal, regarding the amount of the contempt award, was filed with the Michigan Court of Appeals in December 2013, and was stayed by the filing of the Debtor's bankruptcy case. (See AP Dkt. No. 4 at n. 6; AP Dkt. No. 13 at 12-13.)  The Debtor's pleadings also indicate that he plans to continue the appeal "for the purpose of reducing the amount of the Award" if this adversary proceeding is not dismissed.  (AP Dkt. No. 13 at 13.)
        When the court inquired about the appeal at oral argument, the parties were unsure of its status.  (See Transcript of Hearing on Cross Motions for Summary Judgment, AP Dkt. No. 14 at 6) (herein "Tr. at ___.")  However, accepting the Debtor's statements as true, the fact that the amount of the contempt award may be subject to further appeal does not affect the finality of the state court's liability determination and is not material to this court's analysis of the dischargeability of the debt.  Counsel for the Debtor acknowledged at oral argument that the contempt award is a "final judgment as to that obligation."  (See Tr. at 3.)

identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought" and that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (the summary judgment analysis is a "threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party").  All facts and related inferences are to be viewed in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255, 106 S. Ct. at 2513.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (citation omitted).

Further, when a court reviews cross-motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party."  Wiley v. United States (In re Wiley), 20 F.3d 222, 224 (6th Cir. 1994).   Denial of one party's motion for summary judgment does not automatically compel the conclusion that the other party is entitled to summary judgment.  B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001).

B.  *Section 523(a)(6) and the Preclusive Effect of the State Court Contempt Award.*

The Plaintiff's complaint in this adversary proceeding alleges that the debt resulting

from the state court Contempt Award is nondischargeable in the Debtor's chapter 7 case

under § 523(a)(6).   In his cross motion for summary judgment, the Plaintiff further alleges

that the elements of its nondischargeable debt claim are established by the factual

findings in the Contempt Award, which he argues are entitled to collateral estoppel effect

in this adversary proceeding.   Before addressing the specific arguments raised by the

Debtor in response to these assertions and in support of his respective motion for

summary judgment, the court will briefly analyze the standards for determining

dischargeability under § 523(a)(6) and will consider the issue preclusive effect of the state

court Contempt Award.

1.   Willful and Malicious Injury under § 523(a)(6) and Contempt Sanctions.

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by

the debtor to another entity or to the property of another entity."   11 U.S.C. § 523(a)(6).

To except a debt from discharge under this subsection, the Plaintiff must show that he

suffered a loss or injury as a result of willful and malicious conduct of the debtor.   See

Steier v. Best (In re Best), 109 F. App'x 1, 5 (6th Cir. June 30, 2004) (unpublished opinion)

(quoting In re Finch, 289 B.R. 638 644 (Bankr. S.D. Ohio 2003)) (additional citations

omitted).   The "injury must invade the creditors' legal rights."   Id. at 6 (explaining that "the

word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm

to a person") (quoting In re Geiger, 113 F.3d 848, 852 (8th Cir. 1997), aff'd, 523 U.S. 57,

118 S. Ct. 974 (1998)); see National Sign & Signal v. Livingston, 422 B.R. 645, 653 (W.D.

Mich. 2009) ("An 'injury' is '[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice.'") (citation omitted).

Willfulness under § 523(a)(6) requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998) (emphasis in original). Thus, a willful injury is one where the debtor "'desires to cause [the] consequences of his act, or . . . *believes that the consequences are substantially certain to result from it.*'" Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 464 (6th Cir. 1999) (quoting Restatement (Second) of Torts § 8A, at 15 (1964)) (emphasis added); see Kawaahau, 523 U.S. at 61, 118 S. Ct. at 977 (noting that this "formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts"). An injury is "malicious" under § 523(a)(6) when a debtor acts "in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986); Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298, 308 (6th Cir. B.A.P. 2004). The statute requires that the alleged injury be both willful and malicious for the debt to be nondischargeable. In re Markowitz, 190 F.3d at 463. The Plaintiff bears the burden of establishing each element of his nondischargeable debt cause of action by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991).

The Sixth Circuit Court of Appeals has suggested a non-exclusive list of the types of misconduct that satisfy the willful and malicious injury standard of § 523(a)(6). That list includes debts arising out of:  "intentional infliction of emotional distress, malicious

prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." In re Best, 109 F. App'x at 5 & n.2 (citations omitted); National Sign & Signal, 422 B.R. at 658.  Although this list does not specifically include debts arising from contempt sanctions, other courts, including the Sixth Circuit, have almost "uniformly . . . held that a contempt penalty constitutes a nondischargeable willful-and-malicious injury under § 523(a)(6)."  Musilli v. Droomers (In re Musilli), 379 F. App'x 494, 499 (6th Cir. June 3, 2010) (unpublished opinion) (citing Siemer v. Nangle (In re Nangle), 274 F.3d 481, 484 (8th Cir. 2001) and Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams), 337 F.3d 504, 511-12 (5th Cir. 2003)).

In Musilli, the Sixth Circuit held that a debt resulting from a prepetition state court criminal contempt judgment against the debtor was nondischargeable under § 523(a)(6). The debtors in Musilli were shareholders in a law firm that received a fee of over $1 million in a suit against General Motors.  Droomers filed suit against the law firm, alleging that the firm owed him a fee of approximately $350,000 for referring the case, or alternatively, that he was owed fees under a theory of quantum meruit.  In the course of the litigation, the state court entered an order enjoining the law firm from transferring any firm assets until it placed the approximately $350,000 in escrow.  Droomers was ultimately unsuccessful on his referral fee claim but prevailed, in part, on his quantum meruit claim. The debtors were subsequently held in criminal contempt of court for "flagrantly violating" the escrow order.  In re Musilli, 379 F. App'x at 496.

Although the Sixth Circuit stopped short of holding that a "debt resulting from contempt is willful and malicious per se," it carefully examined the state court record and

concluded that the contempt sanctions constituted a debt arising from willful and malicious injury to Droomers.  Id. at 498-99.  The court explained that the "escrow order made clear that 'injury was substantially certain to occur' should [the debtors] violate it."  Id. at 499.  The court further noted that the debtors had failed to point to any facts in the record that would refute this finding.  Although the state court gave the debtors "clear instructions" that the law firm was to "escrow funds sufficient to cover a judgment against it," the debtors "transferred all of the firm's assets away from the firm, including transferring a significant amount of money to themselves" in direct violation of the court order.  The debtors "offered no legitimate justification that might explain why their actions were not willful and malicious."  Id.  Therefore, the Sixth Circuit affirmed the bankruptcy court's grant of summary judgment on Droomers' § 523(a)(6) claim.  The Musilli court's application of the § 523(a)(6) standard to a prior state court contempt finding is instructive in this adversary proceeding.

The rationale for holding contempt sanctions nondischargeable under § 523(a)(6) has also been succinctly articulated by several courts outside of the Sixth Circuit:

> When a court of the United States . . . issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order as is proven either in the Bankruptcy Court or, so long as there was a full and fair opportunity to litigate the questions of volition and violation, in the issuing court are *ipso facto* the result of a "willful and malicious injury."

> This is because what is "just" or "unjust" conduct as between the parties has been defined by the court . . . .  An intentional violation of the order is necessarily without "just cause or excuse" and cannot be viewed as not having the intention to cause the very harm to the protected persons that order was designed to prevent.

Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams), 337 F.3d 504, 512 (5th Cir. 2003) (quoting Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn), 242 B.R. 229, 238 (Bankr. W.D.N.Y. 1999)).  This court agrees with the quoted rationale and holds that, to the extent the Contempt Award in this proceeding arose from the Debtor's willful and malicious violation of the Injunctive Order and caused injury to the Plaintiff, the Award is nondischargeable under § 523(a)(6).

> 2.  Collateral Estoppel:  Is the State Court Contempt Opinion entitled to Preclusive Effect in this Adversary Proceeding?

The Plaintiff asserts that the "willful" and "malicious" nature of the state court Contempt Award is established by the factual findings of the state court, which he argues are entitled to collateral estoppel effect in this adversary proceeding.  The doctrine of collateral estoppel, or issue preclusion, applies in nondischargeability proceedings.  See Grogan v. Garner, 498 U.S. at 284-85 n.11, 111 S. Ct. at 656; McCurdie v. Strozewski (In re Strozewski), 458 B.R. 397, 403-04 (Bankr. W.D. Mich. 2011) (while the bankruptcy court must make its own determination regarding the dischargeability of a debt, that determination may be governed by factual issues which were decided in a prior proceeding).  Accordingly, collateral estoppel prevents an issue of fact or law from being relitigated in a nondischargeable debt proceeding, where the issue "was actually litigated and necessarily decided in a prior action between the same parties."  Phillips v. Weissert (In re Phillips), 434 B.R. 475, 485 (6th Cir. B.A.P. 2010) (citing In re Markowitz, 190 F.3d at 461).

When determining the preclusive effect of a prior state court judgment, this bankruptcy court is required to give the prior judgment the same preclusive effect it would have in the state court, unless the Full Faith and Credit Statute, 28 U.S.C. § 1738,

provides an exception.  Hinchman v. Moore, 312 F.3d 198, 202 (6th Cir. 2002) (quoting

Migra v. Warren City School District Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 896

(1984)); In re Strozewski, 458 B.R. at 404 (also citing Migra) (additional citation omitted).

Here, the contempt order was entered by a Michigan court, so Michigan preclusion law

governs.

Under Michigan law, issue preclusion applies when:

(1)    there is identity of parties across the proceedings,
(2)    there was a valid, final judgment in the first proceeding,
(3)    the same issue was actually litigated and necessarily determined in
       the first proceeding, and
(4)    the party against whom the doctrine is asserted had a full and fair
       opportunity to litigate the issue in the earlier proceeding.

Darrah v. City of Oak Park, 255 F.3d 301, 311 (6th Cir. 2001) (citing People v. Gates, 434

Mich. 146, 154, 452 N.W.2d 627, 630-31 (1990)).  Application of these requirements

furthers the purpose of collateral estoppel, which is "to strike a balance between the need

to eliminate repetitious and needless litigation and the interest in affording litigants a full

and fair adjudication of the issues involved in their claims."  Storey v. Meijer, Inc., 431

Mich. 368, 372-73, 429 N.W.2d 169, 171 (1988) (citations omitted).  When determining

whether issue preclusion applies, this court must "look beyond the pleadings to consider

both the 'factual focus' of the prior proceedings and 'whether the party against whom

collateral estoppel is asserted has had a full and fair opportunity to litigate the issue.'"

Livingston v. Transnation Title Insurance Co. (In re Livingston), 372 F. App'x 613, 617

(6th Cir. Apr. 9, 2010) (unpublished opinion) (citing Gates, 452 N.W.2d at 631).

There is no dispute that the parties to this adversary proceeding are the same

parties involved in the state court litigation and that the contempt sanctions were imposed

in a valid, final judgment.[7]  The key question is whether the facts necessary to establish "willful and malicious injury" under § 523(a)(6) were actually litigated and necessarily determined in the state court.

Michigan law considers an issue "actually litigated" if it is "put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter decided."  In re Phillips, 434 B.R. at 486 (citing Latimer v. William Mueller & Son, Inc., 149 Mich. App. 620, 640, 386 N.W.2d 618, 627 (1986)).  Under Michigan law, "[a]n issue is necessarily determined only if it is 'essential' to the judgment."  Gates, 452 N.W.2d at 631 (citing Restatement (Second) of Judgments § 27 cmt. h (1982)).  The "appropriate question is whether the issue was actually recognized by the parties as important and by the trier as necessary" to the prior judgment.  Restatement (Second) of Judgments § 27 at cmt. j.  If it was, the determination will most often be "conclusive between the parties in a subsequent action."  Id. (noting that this result is subject to the exceptions to the general rules of issues preclusion set forth in § 28 of the Restatement (Second)).

The issues regarding the Debtor's violation of the Injunctive Order were litigated thoroughly and extensively, both in the trial court and on appeal.  The Debtor actively participated in every aspect of the contempt litigation.  The trial court made extensive factual findings in a detailed written opinion that was carefully analyzed and affirmed on appeal.  The Debtor argues, however, that the factual issues that would establish the willful and malicious nature of the contempt sanctions were not "necessarily determined" by the state courts.  The Debtor bases this assertion on the differing standards of

---

[7]    The court recognizes that the amount of the contempt award may be subject to an additional appeal in the state court.  See note 6, supra.  This court's determination of the nondischargeable nature of the debt is without prejudice to the Debtor's right to request relief from stay, if necessary, and pursue his appeal regarding the amount of the award in the state court.

culpability that apply to state court civil contempt findings and determinations of nondischargeability under § 523(a)(6).

The Sixth Circuit recently addressed the question of whether collateral estoppel applies to a state court judgment in a nondischargeable debt action when state law imposes a different "mental-state standard" than is required under the Bankruptcy Code. See Nehasil v. Grenier (In re Grenier), 458 F. App'x 436 (6th Cir. Jan. 31, 2012) (unpublished opinion). The creditors in Grenier purchased a home from the debtors, only to discover soon after that the house had serious defects, including "water damage, rotting floors, insect infestation, faulty electrical wiring, and fake water fixtures," that had been concealed by the debtors. Id. at 438. The creditors sued the debtors for fraud in Michigan state court, and the jury returned a verdict awarding the creditors nearly $300,000 in damages. Id. After the debtors filed their bankruptcy case, the creditor sought to have this debt excepted from the debtors' discharge under § 523(a)(2)(A). The debtors argued that the state court jury verdict was not entitled to preclusive effect, because Michigan law permits a finding of fraud when false statements are made recklessly, whereas § 523(a)(2)(A) requires "at least gross recklessness." Id.

The Sixth Circuit held that the debtors' argument about the differing legal standards "might have some force" if all it "had to go on were the fact of the Greniers' liability for fraud."[8] Id. at 438. But, in this case, it "had more." Id. In finding the debtors liable for

---

[8]    In the absence of specific factual findings, some courts have refused to afford preclusive effect to state court judgments in subsequent nondischargeable debt actions, when the applicable state law imposes a lesser mental state standard than is required under § 523(a). See, e.g., Dantone v. Dantone (In re Dantone), 477 B.R. 28, 38-40 (6th Cir. B.A.P. 2012) (state court money judgment, which did not state basis for award, could be presumed to be for statutory conversion due to inclusion of punitive damages; however, allegations of fraud in complaint were not essential to the judgment because Michigan law does not require a finding of "circumstances indicating fraud" for statutory conversion).

fraud, "the Michigan jury made specific factual findings" including a finding that the debtors had actual knowledge about the defects in the home that they failed to disclose. Id. at 438-39.  The court gave preclusive effect to this factual finding and held that the debt was nondischargeable, notwithstanding the minor difference in the applicable legal standards.  Id. at 439; see also In re Livingston, 372 F. App'x at 619 (declining to decide whether the elements of fraud under Michigan law were "identical to the higher federal 'gross recklessness' standard for non-dischargeablity under § 523(a)(2)(A)" before affording preclusive effect to a state court judgment, because the factual findings of the state courts "conclusively establish[ed] fraud under the bankruptcy-law standard.")

Although Grenier involved fraud under § 523(a)(2)(A), its reasoning applies with equal force to the § 523(a)(6) claim at issue in this adversary proceeding.  In the prior state court litigation, both the trial court and the Michigan Court of Appeals acknowledged that civil contempt under Michigan law does not require "willful disobedience" of a court order, but only requires the court to find that the actor "was neglectful or violated its duty to obey an order of the court."   See Exh. B at 10; Exh. H at 7.  Under this standard, the state courts theoretically could have held the Debtor in contempt without finding the "willful" disobedience of the Injunctive Order required under § 523(a)(6).  But that is not what occurred.  Instead, having noted the potentially lower standard of culpability, the state courts went on to make detailed factual findings regarding the Debtor's knowledge of the existence, terms, and duration of the Injunctive Order.  Describing the Debtor's behavior as a "textbook example of contempt of court" the trial court held that the Debtor, "who recognized that a court order prohibited all transfers of MSG's assets" proceeded to take actions that "did precisely what the court forbade."   See Exh. B at 15-16.  Citing

transcripts of prior court proceedings, and an email authored by the Debtor himself, the trial court held that the Debtor was an active participant in discussing the terms of the Injunctive Order, and was "well aware" of its continuing force.  Despite this awareness, the Debtor knowingly participated in the sale of MSG's assets in direct violation of the Injunctive Order.  These specific factual findings were not gratuitous comments or dicta, but rather were essential elements of the trial court's analysis and opinion.  The significance of these findings, and their centrality to the factual focus of the state courts, is further evidenced by the fact that they were appealed by the Debtor and affirmed by the Michigan Court of Appeals.  The appellate court's opinion specifically rejected the Debtors arguments regarding the "infirmity" of the Injunctive Order and his lack of knowledge of the order and its duration.  Under the circumstances of this case, the detailed factual findings of the state courts were essential to the Contempt Award should be given preclusive effect in this adversary proceeding.

This court's conclusion that the factual findings made by the state court are entitled to preclusive effect in this adversary proceeding is not only consistent with <u>Grenier</u> and other relevant case law, but also effectuates the underlying purposes of collateral estoppel.  Like the findings in <u>Grenier</u>, and as discussed in greater detail below, the state court's factual findings in this case conclusively establish the nature of the Debtor's actions under § 523(a)(6).  To relitigate those issues in this court would result in precisely the type of repetitious litigation, waste of resources, and potential for inconsistent judgments that the doctrine of collateral estoppel is designed to prevent.  <u>See Monat v. State Farm Ins. Co.</u>, 469 Mich. 679, 692-93, 677 N.W.2d 843, 851 (2004) (under Michigan law, the doctrine of collateral estoppel acts "to relieve parties of the cost and vexation of

multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication . . . ."); see also Parklane Hoisery Co. v. Shore, 439 U.S. 322, 336 n.23, 99 S. Ct. 645, 654 (1979) ("[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.").

### 3. Do the State Court's Factual Findings Establish the "Willful" and "Malicious" Nature of the Contempt Award?

The state courts' specific factual findings regarding the Debtor's knowing violation of the Injunctive Order establish that the Debtor's actions were willful for purposes of § 523(a)(6).  The trial court's factual findings, which were affirmed by the Michigan Court of Appeals, conclusively establish that the Debtor knew about the Injunctive Order, and understood its terms.  The Injunctive Order identified the precise conduct – transfer of MSG's assets – that was "substantially certain" to result in injury to the Plaintiff.  Despite the Debtor's knowledge of the Injunctive Order and its terms, he intentionally undertook conduct that "did precisely what the court order forbade."  See Exh. B at 15.  Under these circumstances, this court finds that the Debtor's contemptuous conduct was "willful."

Despite the Debtor's assertions to the contrary, the factual findings made by the state courts in connection with the Contempt Award also establish the "malicious" nature of the Debtor's actions.  In his response to the Plaintiff's motion for summary judgment the Debtor raises seven bases on which he asserts this court should hold his violations of the Injunctive Order were undertaken with "just cause or excuse":

> (1) the unusual formation of the injunction; (2) the fact C&H was owed $398,359.91 at the time of the Article 9 sale; (3) C&H held a valid security interest; (4) the Plaintiffs were not creditors of MSG; (5) Schnoor was the only named restrained party; (6) the Injunction was stipulated to be in effect for two weeks but it lasted indefinitely; (6) no one informed C&H or the

> Debtor that they were restrained by the Injunction; and (7) C&H believed Morris' security interest in the stock was worthless due to the actions of the Plaintiffs . . . .

See AP Dkt. No. 13 at 22.  These arguments were raised – and conclusively rejected – in the prior state court litigation.  The Michigan Court of Appeals deemed the Debtor's arguments regarding the validity of C&H's security interest a "red herring," and rejected his assertions regarding the "infirmities" of the Injunctive Order.  The appellate court also affirmed the trial court's findings that the Debtor knew about the Injunctive Order, knew it applied to him, understood its duration and recognized that it remained in effect at the time the MSG stock were transferred.  In light of these factual findings, no plausible argument can be made that the Debtor violated the Injunctive Order with "just cause or excuse."  The state court findings establish that the Debtor knowingly and consciously disregarded his duties under the Injunctive Order.  Therefore, his actions were malicious under § 523(a)(6).

4. The Defendant's Motion for Summary Judgment:  Is the Contempt Award a Debt for Injury to the Plaintiff or the Plaintiff's Property?

Finally, the court will address the Debtor's argument that regardless of the willful and malicious nature of the Debtor's conduct, the Contempt Award does not constitute a debt for "injury" to the Plaintiff or his property, which is a threshold requirement of § 523(a)(6).  The Debtor argues that the contempt damages imposed against him personally were awarded to compensate the Plaintiff for costs incurred in conjunction with the contempt proceedings.  He points out that the Plaintiff sued other parties – including C&H – for fraud, conversion, and other intentional torts in connection with the transfer of the MSG stock.  Even in the context of the contempt proceedings, it was C&H, and not the Debtor, that was held responsible for the Plaintiff's loss of its one-half interest in the

MSG stock.  According to the Debtor, the state court emphasized this point when it stated in its opinion that the Contempt Award did not involve "damages for personal injury, property damage, or wrongful death" and refused to allocate the award between responsible parties under Mich. Comp. Laws § 600.2957(1).  See Exh. D at 2-3; Exh. E at 4.

However, the fact that the Debtor was not held liable for the underlying fraudulent transfer or that other parties were ordered to compensate the Plaintiff for the lost stock value he suffered as a result of the transfer does not compel the conclusion that the Plaintiff suffered no injury as a result of the Debtor's contempt.  Again, the state court's Injunctive Order specifically identified a prohibited action – i.e., transfer of MSG's assets – that would "cross the line into injury" to the Plaintiff.  In re Williams, 337 F.3d at 512 (quoting In re Behn, 242 B.R. at 238); see In re Best, 109 F. App'x at 5 (for purposes of § 523(a)(6), an "injury" is an "invasion of the creditor's legal rights").  Upon finding that the Debtor knowingly crossed this line and acted in contempt of the Injunctive Order, the state court imposed sanctions pursuant to Mich. Comp. Laws § 600.1721.  That section provides that when "alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant."  Id.  These attorney's fees and costs were awarded to the Plaintiff as a result of the Debtor's knowing violation of the Injunctive Order and were imposed to compensate the Plaintiff for the injuries he suffered as a direct result of the Debtor's willful and malicious actions.

Other courts that have addressed the issue of whether prepetition contempt awards are compensation for "injury" to the plaintiff when there is no underlying judgment

debt and the award is only for statutory fees and costs have reached this same result. See, e.g., In re Musilli, 398 B.R. 447, 455-56 (E.D. Mich. 2008), aff'd, 379 F. App'x 494 (6th Cir. 2010) (rejecting debtors' arguments regarding the creditors' lack of an interest in property subject to state court escrow order and "injury" thereto; even though creditor obtained escrow order by asserting rights under the Michigan UFTA, damages imposed against debtors for violation of that order arose from their contempt and not under the UFTA); Suarez v. Barrett (In re Suarez), 400 B.R. 732 (9th Cir. B.A.P. 2009). In Suarez, the Ninth Circuit B.A.P. held that an award of attorney's fees and costs for contempt of a state court injunction was the proximate result of the debtor's willful and malicious violation of the injunction, notwithstanding the fact that the contempt award did not include a compensatory component. The court noted that, when faced with the debtor's violation of a state court injunction:

> [The creditor] had two choices: to suffer in silence, or pursue enforcement of the outstanding order. Neither the law nor basic fairness require the former; the latter was a natural consequence of [the debtor's] contemptuous behavior. In electing to pursue her remedies, [the creditor] was substantially certain to incur fees and costs, and the monetary sanction imposed was to compensate her for those fees and costs.

In re Suarez, 400 B.R. at 740 (citing Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212 (1998) (the phrase "any debt for" in § 523(a) includes all debts and liability arising from the specified conduct)) (additional citations omitted). Like the attorney's fees and costs in Suarez, the Contempt Award in this adversary proceeding was imposed to compensate the Plaintiff for injuries he suffered as a result of the Debtor's willful and malicious violation of the Injunctive Order. Accordingly, the Contempt Award is nondischargeable under § 523(a)(6).

IV.    <u>CONCLUSION</u>.

The Contempt Award in this case was based on the state courts' findings that the Debtor knowingly and intentionally transferred MSG's assets in violation of the Injunctive Order and that the Plaintiff incurred damages as a direct result of the Debtor's actions. Those factual findings also establish that the Debtor's actions were "willful" and "malicious" under § 523(a)(6). The Injunctive Order prohibited conduct that would, by definition, cause injury to the Plaintiff. By knowingly violating the Injunctive Order, the Debtor acted "willfully" because he either intended to cause injury to the Plaintiff, or could be substantially certain that injury would result. The Debtor also acted "maliciously" because his violation of the Injunctive Order was in conscious disregard of his duties to comply with the order. The damages awarded to the Plaintiff were a result of the Defendant's willful, malicious, and contemptuous actions.

For these reasons, the Plaintiff is entitled to judgment as a matter of law under § 523(a)(6) and his cross motion for summary judgment shall be granted. The Defendant's motion for summary judgment shall be denied. A separate order shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated September 30, 2015**





James W. Boyd
United States Bankruptcy Judge



# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

DAVID W. CHARRON,

      Debtor.

Case No: BG 14-07970
Chapter 7

_____/

GLENN S. MORRIS and THE GLENN S.
MORRIS TRUST,

      Plaintiffs,

Adversary Proceeding
No. 15-80086

v.

DAVID W. CHARRON,

      Defendant.

_____/

## ORDER DENYING DEBTOR-DEFENDANT'S MOTION TO AMEND THE COURT'S FINDINGS UNDER RULE 52 AND AMEND JUDGMENT UNDER RULE 59

PRESENT:   HONORABLE JAMES W. BOYD
                  United States Bankruptcy Judge

In accordance with a Memorandum Opinion Denying Debtor-Defendant's Motions to Amend the Court's Findings Under Rule 52, Amend Judgment Under Rule 59, and for Reconsideration Under Rule 60, entered on this date, which reasoning is incorporated herein;

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor-Defendant's Motion to Amend the Court's Findings Under Rule 52 and Amend Judgment Under Rule 59 (AP Dkt. No. 17) be, and hereby is, DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to FED. R. BANKR. P. 9022 and LBR 5005-4 upon the Debtor-Defendant; Ronald A. Spinner, Esq., attorney for the Plaintiffs, and Perry G. Pastula, Esq., attorney for the Debtor-Defendant.

## END OF ORDER

**IT IS SO ORDERED.**

**Dated November 25, 2015**



James W. Boyd
United States Bankruptcy Judge



RECEIVED
NOV 3 0 2015

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

DAVID W. CHARRON,

     Debtor.

_____/

Case No: BG 14-07970
Chapter 7

GLENN S. MORRIS and THE GLENN S.
MORRIS TRUST,

     Plaintiffs,

v.

DAVID W. CHARRON,

     Defendant.

_____/

Adversary Proceeding
No. 15-80086

## ORDER DENYING DEBTOR-DEFENDANT'S MOTION FOR RECONSIDERATION UNDER RULE 60

PRESENT:   HONORABLE JAMES W. BOYD
                  United States Bankruptcy Judge

In accordance with a Memorandum Opinion Denying Debtor-Defendant's Motions to Amend the Court's Findings Under Rule 52, Amend Judgment Under Rule 59, and for Reconsideration Under Rule 60, entered on this date, which reasoning is incorporated herein;

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor-Defendant's Motion for Reconsideration Under Rule 60 (AP Dkt. No. 19) be, and hereby is, DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to FED. R. BANKR. P. 9022 and LBR 5005-4 upon the Debtor-Defendant; Ronald A. Spinner, Esq., attorney for the Plaintiffs, and Perry G. Pastula, Esq., attorney for the Debtor-Defendant.

### END OF ORDER

**IT IS SO ORDERED.**

**Dated November 25, 2015**



James W. Boyd
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

DAVID W. CHARRON,                                  Case No: BG 14-07970
                                                   Chapter 7
      Debtor.
_____/

GLENN S. MORRIS and THE GLENN S.
MORRIS TRUST,
                                                   Adversary Proceeding
      Plaintiffs,                               No. 15-80086

v.

DAVID W. CHARRON,

      Defendant.
_____/

**MEMORANDUM OPINION DENYING DEBTOR-DEFENDANT'S
MOTIONS TO AMEND THE COURT'S FINDINGS UNDER RULE 52,
AMEND JUDGMENT UNDER RULE 59, AND FOR
RECONSIDERATION UNDER RULE 60**

Appearances:

Ronald A. Spinner, Esq., Detroit, Michigan, attorney for Glenn S. Morris and the Glenn S.
    Morris Trust, Plaintiffs.

Perry G. Pastula, Esq., Wyoming, Michigan, attorney for David W. Charron, Debtor-
    Defendant.

I.       FACTS AND PROCEDURAL BACKGROUND.

On September 30, 2015, this Court entered an Opinion and Order Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment in the above-captioned adversary proceeding.  (AP Dkt. Nos. 15 & 16.)  In the Opinion and Order, this Court held that various factual findings made by the

Kent County Circuit Court when it imposed civil contempt sanctions against David W. Charron (the "Debtor") were entitled to preclusive effect in this adversary proceeding under the doctrine of collateral estoppel. Because those factual findings established that the Debtor's actions were "willful" and "malicious" and resulted in injury to the Plaintiffs or their property, this Court concluded that the state court contempt sanctions were nondischargeable in the Debtor's bankruptcy case pursuant to 11 U.S.C. § 523(a)(6).

On October 14, 2015, the Debtor filed his Motion to Amend the Court's Findings under Rule 52 and Amend Judgment under Rule 59. (AP Dkt. No. 17.) Glenn S. Morris and the Glenn S. Morris Trust (the "Plaintiffs") filed a response to the Debtor's Motion to Amend the Court's Findings under Rule 52 and Amend Judgment under Rule 59. (AP Dkt. No. 18.) On November 2, 2015, the Debtor filed his Motion for Reconsideration under Rule 60. (AP Dkt. No. 19.) The Plaintiffs filed a statement indicating that they would not file a substantive response to the Debtor's Rule 60 motion unless directed to do so by the Court. (AP Dkt. No. 20.) This memorandum opinion addresses the requests for relief asserted in both of the Debtor's motions.

## II.    DISCUSSION.

### A.    *Request for Additional Factual Findings – Rule 52.*

In his first request for relief, the Debtor asks this Court to make twenty-seven "additional fact findings for the purpose of assisting any future appellate review, and more fully depicting the facts of the case . . . ." <u>See</u> Debtor's Motion to Amend the Court's Findings under Rule 52 and Amend Judgment under Rule 59, AP Dkt. No. 17, at 2. The Debtor bases this request on Bankruptcy Rule 7052, which makes Federal Rule of Civil Procedure 52 applicable to adversary proceedings. Rule 52(b) provides:

2

> On a party's motion filed no later than [14] days after the entry of judgment,
> the court may amend its findings – or make additional findings – and may
> amend the judgment accordingly.  The motion may accompany a motion for
> a new trial under Rule 59.

Fed. R. Civ. P. 52(b); see also Fed. R. Bankr. P. 7052 (stating that motions under Rule 52(b) must be filed no later than 14 days after entry of judgment in bankruptcy adversary proceedings, rather than 28 days as provided in Rule 52(b)).

The main purpose of Rule 52(b) is "to create a record upon which the appellate court may obtain the necessary understanding of the issues to be determined on appeal." See In re St. Marie Development Corp. of Montana, Inc., 334 B.R. 663, 675 n.3 (Bankr. D. Mont. 2005); see also 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2582 (3d ed. 2015).  A motion to amend under Rule 52(b) may be used "to clarify essential findings or conclusions, correct errors of law or fact, or to present newly discovered evidence." 10 Collier on Bankruptcy ¶ 7052.03 (16th ed. 2015) (citing Wal-Mart Stores, Inc. v. El-Amin (In re El-Amin), 252 B.R. 652, 656 (Bankr. E.D. Va. 2000) (the purpose of the rule is to correct an "egregious error of law or fact, not the resubmission of unsuccessful arguments")) (additional citations omitted).  Rule 52(b) motions are not to be used to obtain a re-hearing on the merits or to raise arguments that could have been made before the court's earlier ruling.  In re Busch, 369 B.R. 614, 621 (Bankr. 10th Cir. 2007); Wilkerson v. Debaillon, 2013 WL 3803972 at *7 (W.D. La. July 18, 2013) (unpublished opinion); MidWestOne Bank & Trust v. Commercial Fed. Bank, 331 B.R. 802, 813 (S.D. Iowa 2005).  Most importantly for purposes of the motion currently before the Court, motions to amend factual findings under Rule 52(b) are generally not appropriate when the matter was decided on summary judgment, because summary judgment does not entail finding facts.  9C Federal Practice and Procedure at § 2582

3

(citing <u>Trentadue v. Integrity Committee</u>, 501 F.3d 1215, 1237 (10th Cir. 2007) (trial court did not abuse its discretion in denying motion for additional findings under Rule 52(b); the rule only applies to cases in which the trial court "issues factual findings following a trial on the merits" not those "terminated on summary judgment")); <u>Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.</u>, 680 F. Supp. 159, 161 (D.N.J. 1988) (the trial court "does *not* engage in fact-finding within the meaning of Fed. R. Civ. P. 52 on a motion for summary judgment;" accordingly, a motion for "amendment of findings made in connection with the summary judgment motion is procedurally inappropriate") (emphasis in original)) (additional citations omitted).

In this adversary proceeding, the Court's prior opinion and order were issued on cross motions for summary judgment.  Because this Court did not engage in fact-finding within the meaning of Rule 52 in deciding the motions for summary judgment, the Debtor's motion for additional findings under Rule 52(b) is procedurally inappropriate and shall be denied.  The Court has, however, considered the matters raised in the Debtor's Rule 52(b) motion in the context of Rule 59 and Rule 60.

B.   *Alteration or Amendment of the Judgment – Rule 59.*

The Debtor also asks this Court to amend its prior opinion and order under Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59.  Bankruptcy Rule 9023 makes Rule 59 applicable in bankruptcy cases.  Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than [14] days after the entry of the judgment."  Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023 (requiring motions to alter or amend to be filed "no later than 14 days after entry of judgment" in bankruptcy cases). The Debtor's request was timely filed.

4

Alteration or amendment of a judgment under Rule 59(e) is only justified in instances where there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.  See GenCorp. Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).  Motions for reconsideration are "not an opportunity to re-argue a case" and should not be used by the parties to "raise arguments which could, and should, have been made before judgment issued."  Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998); FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir.1992).

As noted above, the Court has considered the Debtor's requests to amend the Court's prior "factual findings" under the standard that applies to motions brought pursuant to Rule 59(e).  The issues raised in paragraphs one through twenty-seven of the Debtor's motion ask this Court to re-characterize its factual summary of the proceedings in the state trial and appellate courts, and to add additional "findings" based on the Debtor's view of the record in the state courts and in this adversary proceeding. Amending the Court's prior opinion and order to reflect the changes sought by the Debtor would not clarify essential findings or conclusions, correct errors of law or fact, or address newly discovered evidence.  Accordingly, the Debtor's requests to alter or amend the judgment on these bases shall be denied.  In addition, the issues raised in paragraphs twenty-five and twenty-seven of the Debtor's motion were also argued in the Debtor's Rule 60 motion, and are addressed in that context.

The Court has also reviewed the requests for relief set forth in paragraphs one and two of the Debtor's Rule 59 motion in light of the state court record and the record in this adversary proceeding.  These paragraphs of the Debtor's motion ask this Court to change

5

two specific sentences in the prior opinion and order. Those sentences summarized proceedings before the state trial court that led to entry and extension of the Injunctive Order that the Debtor was ultimately found to have violated. The Debtor offers no newly-discovered evidence in support of these requests, and does not argue that there has been an intervening change in controlling law since entry of this Court's prior opinion and order. The Debtor's motion also fails to demonstrate that a clear error of law has been committed or that the language in the prior opinion must be set aside to avoid manifest injustice. Therefore, the Debtor's motion to alter or amend these portions of the Court's previous opinion shall be denied.

The relief requested in the third paragraph of the Debtor's Rule 59(e) motion – i.e., that the Court clarify the basis for the state trial court's contempt award – was also raised in the Debtor's motion to reconsider under Rule 60 and is addressed in that context below.

C. _Motion for Relief from Judgment or Order – Rule 60_.

In his second motion, filed with the Court on November 2, 2015, the Debtor requests that the Court reconsider its prior opinion and order under Federal Rule of Bankruptcy Procedure 9024, which makes Federal Rule of Civil Procedure 60 applicable to bankruptcy cases. The Debtor's motion to reconsider is specifically brought pursuant to Rule 60(b)(1) which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1). The Sixth Circuit Court of Appeals has explained that a motion under Rule 60(b)(1) is "'intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when

6

the judge has made a substantive mistake of law or fact in the final judgment or order.'"
Cacevic v. City of Hazel Park, 226 F.3d 483, 490 (6th Cir. 2000) (quoting Yapp v. Excel
Corp., 186 F.3d 1222, 1231 (10th Cir.1999)); see also Bank of California, N.A. v. Arthur
Andersen & Co., 709 F.2d 1174, 1177 (7th Cir.1983) ("Rule 60(b)(1) is intended to allow
clear errors to be corrected without the cost and delay of an appeal.").

First, the Debtor's motion for reconsideration argues that this Court's prior opinion
ignored the significance of the state trial court's dismissal of the fraudulent conveyance
claim brought by the Plaintiffs against the Debtor.  This Court disagrees.  The basis of
this Court's nondischargeability determination was the state court's finding that the Debtor
acted in contempt of the Injunctive Order and was therefore responsible for $363,506.77
in attorney fees and costs that were incurred by the Plaintiffs in connection with the
contempt proceedings.  As explained in this Court's opinion, this finding of civil contempt
and award of damages was entirely separate and distinct from the state court's
determination that the Debtor was entitled to summary judgment on the fraudulent
conveyance claims against him.  See Opinion Denying Defendant's Motion for Summary
Judgment and Granting Plaintiff's Cross Motion for Summary Judgment, AP Dkt. No. 15
at 24.

Second, the Debtor argues that this Court was mistaken when it concluded that
the trial court awarded damages pursuant to Mich. Comp. Laws § 600.1721 instead of
through its inherent contempt power.  In support of this argument, the Debtor cites a
passage in the Michigan Court of Appeals' opinion which quotes In re Bradley Estate, 835
N.W.2d 545, 494 Mich. 367 (2013) and deems the Debtor's reliance on that case
"unavailing, based on our Supreme Court's limitation regarding the use of this decision."

7

See Michigan Court of Appeals Opinion at 19 (attached as Exh. H to Defendant's Motion for Summary Judgment, AP Dkt. No. 4) (quoting In re Bradley Estate, and noting that the decision in that case distinguished between contempt actions "premised in tort liability" and those "involving a trial court's 'inherent power to punish contempt'"). The Court of Appeals made this statement in the portion of its opinion that considered – and rejected – the Debtor's argument that the trial court had erred by failing to allocate liability for the contempt sanctions under MCL § 600.2957.[1]

This Court has again reviewed the opinions of the state trial court and the Michigan Court of Appeals and believes that the contempt sanctions were accurately characterized in this Court's prior opinion. In support of its authority to impose the contempt sanctions, the trial court cited MCL § 600.1721, In re Contempt of Auto Club Ins. Ass'n, 624 N.W.2d 443, 450-51, 243 Mich. App. 697, 708 (2000) (stating that the courts' power to award contempt sanctions includes the ability to "compensate the complainant;" and further noting that the inherent power of courts to punish contempt has been "reinforced" by the enactment of statutes, including the "general contempt statute," MCL § 600.1701) and Davis v. Detroit Financial Review Team, 821 N.W.2d 896, 925, 296 Mich. App. 568, 626, (2012) (explaining that "coercion to force compliance with a court order and compensatory relief for a complainant are both appropriate potential sanctions for civil contempt"). See

---

[1]     On appeal, as well as in motions for reconsideration and for a new trial in the trial court, the Debtor argued that the contempt sanctions had been imposed pursuant to MCL § 600.1721. The Debtor also argued that based on the Michigan Supreme Court's decision in In re Bradley Estate, 835 N.W.2d 545, 494 Mich. 367 (2013), which held that civil contempt proceedings for "indemnification damages under MCL 600.1721 [seek] to impose tort liability" for purposes of the Government Tort Liability Act, the contempt sanctions should have been allocated among the parties at fault under MCL § 600.2957. The trial court rejected this argument, and the Michigan Court of Appeals affirmed the trial court's determination.

Kent Court Circuit Court Opinion and Order Setting Forth Findings of Civil Contempt at 16, 21 (attached as Exh. B to Defendant's Motion for Summary Judgment, AP Dkt. No. 4.)   The Court of Appeals affirmed the trial court's determination of contempt, its imposition of sanctions against the Debtor, and its refusal to allocate those sanctions under MCL § 600.2957.  It held that the sanctions imposed by the trial court, which represented "compensation for the loss flowing from the alleged violation of the [Injunctive Order]" were appropriate and "consistent with the purpose of civil contempt proceedings." See Michigan Court of Appeals Opinion at 15-16 (citing In re Contempt of Dougherty, 413 N.W.2d 392, 396, 429 Mich. 81, 92-93 (1987)).

Based on the totality of the state court record, the trial court's authority to award the contempt sanctions and the purpose for which they were awarded is entirely evident. The distinction the Debtor attempts to draw between the state court's statutory and inherent contempt powers would not materially affect this Court's nondischargeable debt determination.  Accordingly, the Debtor's motion to reconsider this issue is denied.

Finally, the Debtor argues that this Court created an "unexpected change of course" when it found that the Debtor's conduct resulted in an injury to the Plaintiffs' "person," rather than to the Plaintiffs' property, thereby "transform[ing] the 'debt' represented by the contempt award into the 'injury' suffered by the Plaintiffs."  See Debtor's Motion for Reconsideration under Rule 60, AP Dkt. No. 19 at 12-13.  The Debtor's argument not only mischaracterizes the record in this adversary proceeding and the conclusions in this Court's prior ruling, but also attempts to draw another distinction without a difference.  The basis of the Plaintiffs' complaint, as well as its cross motion for summary judgment, was that the debt to the Plaintiffs should be nondischargeable under

9

11 U.S.C. § 523(a)(6).  Section 523(a)(6) excepts from discharge any debt "for willful and

malicious injury by the debtor to another entity or to the property of another entity."  The

nature of the "injury" suffered by the Plaintiffs as a result of the Debtor's contemptuous

conduct was identified and directly addressed in the Plaintiffs' complaint and cross motion

for summary judgment.[2]  The Debtor had ample opportunity to respond to the Plaintiffs'

allegations and to argue the legal issues presented.[3]  The issues regarding the alleged

"injury" were also argued, in some detail, during oral argument on the summary judgment

---

[2]     In paragraph 95 and 96 of their complaint, the Plaintiffs allege:

   95.  Charron realized that it was substantially certain that Morris would incur
   litigation costs as a result of Charron's and C&H's transfer of MSG's assets to
   NYPIA in violation of the [Injunctive] Order.

   96.  Charron willfully and maliciously caused injury to Morris's property by forcing
   Morris to incur litigation costs which would have been unnecessary by for
   Charron's actions in violation of the [Injunctive] Order.

See Plaintiffs' Complaint Objecting to Discharge, AP Dkt. No. 1, at ¶ 95-96.  In both his motion
for summary judgment and his motion for reconsideration, the Debtor argues that the only "injury"
alleged in the Plaintiffs' complaint was to its property interest in the MSG stock.  To support this
assertion, the Debtor cites to the Plaintiffs' complaint, but omits these critical paragraphs.  See
Debtor's Motion for Summary Judgment, AP Dkt. No. 4, at 8; Debtor's Motion for Reconsideration
under Rule 60, AP Dkt. No. 19, at 12; see also Debtor's Motion for Amended Findings and to
Amend Judgment, AP Dkt. No. 17, at 9.
      The Plaintiffs also addressed the "injury" caused by the Debtor's violation of the Injunctive
Order in a subsection of their summary judgment brief entitled "Debts that are non-dischargeable
under 11 U.S.C. § 523(a)(6) include 'any liability arising' from the prohibited conduct."  See
Plaintiffs' Brief in Support of Cross-Motion for Summary Judgment, AP Dkt. No. 6, at 8-9.

[3]     The Debtor raised arguments about the alleged lack of an "injury" to the Plaintiffs or their
property in his motion for summary judgment and in his response to the Plaintiffs' motion.  See,
e.g., Debtor's Motion for Summary Judgment, AP Dkt. No. 4, at 1 n.3 (acknowledging that the
state trial court stated that the $363,506.77 contempt sanction represented "a compensatory
award of attorney fees, other costs, or both, that Plaintiff Glenn Morris incurred in pursuing civil
contempt against the Debtor"); Debtor's Reply to Counter-Motion for Summary Judgment and
Memorandum in Support Thereof, AP Dkt. No. 13, at 13 (arguing that the Plaintiffs' motion for
summary judgment "fails for the same reason stated in the Debtor's summary judgment motion,
namely, the [Kent County] Circuit Court held that the Award does not represent compensation for
*injury to the Plaintiffs or their property*") (emphasis added).

motions.[4]  This Court's opinion was based on the entire summary judgment record before it, and included a thorough analysis of the "injury" sustained as a result of the Debtor's contempt.   The Debtor's motion merely re-states arguments that were previously considered by this Court.  The Debtor has not established a basis for reconsideration of the Court's prior findings of fact and conclusions of law on this issue.

### III.    CONCLUSION.

For the reasons set forth herein, the Debtor's Motion to Amend the Court's Findings under Rule 52 and Amend Judgment under Rule 59 is denied.  The Debtor's Motion for Reconsideration under Rule 60 is also denied.   Separate orders shall be entered accordingly.

---

[4]     See Transcript of July 8, 2015, ~~~~~~~ ~~oss Motions for Summary Judgment, AP

IT IS SO ORDERED 24.

**Dated November 25, 2015**

James W. Boyd
United States Bankruptcy Judge